STATE of Wisconsin, Plaintiff-Respondent,

v.

Frank M. RUSZKIEWICZ, Defendant-Appellant.†

Court of Appeals

*No. 99–1198–CR. Submitted on briefs April 10, 2000.—Decided May 17, 2000.*

2000 WI App 125

(Also reported in 613 N.W.2d 893.)

───

†Petition to review denied.

442

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark S. Rosen* of *Rosen and Holzman* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Frank M. Ruszkiewicz appeals from two judgments of conviction for second-degree sexual assault pursuant to WIS. STAT. § 940.225(2)(a) (1997–98)[1] and from an order denying postconviction relief. Ruszkiewicz was convicted after a jury returned guilty verdicts on both counts. Except for the postconviction proceeding, Ruszkiewicz represented himself at all proceedings in the trial court. Postconviction counsel also represents Ruszkiewicz on this appeal.

¶ 2. Ruszkiewicz raises two issues on appeal. First, he argues that the trial court failed to make an adequate record of his waiver of counsel and his competency to represent himself. Second, he argues that the trial court erred by refusing to order the production of certain police and medical records concerning the victim.

¶ 3. Although the trial court did not conduct a formal "waiver/competency" hearing pursuant to case law and as recommended by WIS JI—CRIMINAL SM–30, we nonetheless hold in light of the entire record that Ruszkiewicz knowingly and voluntarily waived his right to counsel and that he was competent to

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

represent himself. We also hold in light of Ruszkiewicz's theory of defense that the information he sought in the victim's medical and police records was irrelevant. We affirm the judgments of conviction and the postconviction order.

## FACTS AND TRIAL COURT PROCEEDINGS

¶ 4. Because our resolution of the appellate issues is based on the totality of the record, we recite the history of this case in some detail.

¶ 5. On April 12, 1996, C.W., the female victim, advised a friend that Ruszkiewicz had sexually assaulted her at his residence. The friend, in turn, reported the matter to the City of New Berlin Police Department. When the police arrived at the residence, they encountered a neighbor who reported that C.W. had told her that she had been sexually assaulted by Ruszkiewicz the previous Tuesday, April 9. C.W. also told the neighbor that Ruszkiewicz had used castor oil during the assault. C.W. further stated that she kept meat cleavers next to her bed because she was afraid of Ruszkiewicz. The neighbor also reported seeing bruises on C.W.

¶ 6. At this time, Ruszkiewicz arrived at the residence. He told the police that he and C.W. "had had an argument but that it was no big deal." Ruszkiewicz allowed the police to enter the residence and he showed them C.W.'s bedroom. There the police observed the meat cleavers. The police searched the residence looking for C.W. but she was not present. Later, the police learned her whereabouts and she was interviewed the next day at the police department.

¶ 7. During her interview at the police department, C.W. displayed bruises on her face and other areas of her body. C.W. then provided a statement. She

explained that she had moved into Ruszkiewicz's residence in October 1995. She was to cook, clean and answer Ruszkiewicz's telephone in exchange for room and board. She stated that Ruszkiewicz had sexually assaulted her on Friday, April 12, and the previous Tuesday, April 9. During both assaults, Ruszkiewicz had used castor oil by either attempting to get C.W. to drink the oil or by rubbing the oil on her face and body. During the Tuesday assault, Ruszkiewicz inserted his finger into C.W.'s vagina and rectum. During the Friday assault, Ruszkiewicz inserted his finger into C.W.'s vagina and told her this was part of a "nurturing process, that it was going to happen for two minutes the first time and then it would increase to four minutes, then it would increase to six and then eventually until she wanted it all the time."

¶ 8. Based on this information, Ruszkiewicz was arrested. In a statement to the police, he admitted that he had inserted his finger into C.W.'s rectum and vagina and that he had used physical force during each episode. He also admitted that he did not have C.W.'s consent to perform these acts. He stated that during the Tuesday episode, he told C.W. that he was "trying to teach [her] that she could have sex without being beaten up first like her boyfriend had." He said that the "nurturing process was a religious-type belief and that it was personal."

¶ 9. The State charged Ruszkiewicz with two counts of second-degree sexual assault. At his initial appearance, Court Commissioner Martin Binn advised Ruszkiewicz of his right to be represented by counsel and that counsel would be appointed for him if he qualified financially. Ruszkiewicz replied that he had already declined to meet with the State Public Defender. A public defender who was present at the

arraignment confirmed that this was so. Commissioner Binn then offered to make an appointment for Ruszkiewicz to meet with a public defender the next day. Ruszkiewicz again declined, saying that he wanted to defend himself. Nonetheless, Commissioner Binn directed the jail to allow Ruszkiewicz to telephone a lawyer if he wished to do so.

¶ 10. During this initial appearance, Ruszkiewicz repeatedly attempted to speak to the merits of the charges and about his relationship with C.W. Commissioner Binn repeatedly warned Ruszkiewicz that he should not make any potentially incriminating statements since he was not represented by a lawyer. At the conclusion of the hearing, Ruszkiewicz requested a preliminary hearing.

¶ 11. At the opening of the preliminary hearing, Court Commissioner David Pike confirmed that Ruszkiewicz wished to represent himself. During his cross-examination of the investigating officer, Ruszkiewicz's "questions" were actually narratives about various events, including his relationship with C.W. At one point during his cross-examination of the investigating officer, Ruszkiewicz asked for permission to "fill in the details." In a lengthy and thorough statement, Commissioner Pike explained to Ruszkiewicz the limited scope and purpose of a preliminary hearing. Commissioner Pike also advised Ruszkiewicz that he was not obligated to give any evidence and that anything Ruszkiewicz said could be used against him at the time of trial. Commissioner Pike also expressed concern about the narrative information which Ruszkiewicz was providing via his questions to the investigating officer.

¶ 12. Later, when Ruszkiewicz persisted in asking narrative questions, Commissioner Pike asked

Ruszkiewicz why he did not want a lawyer. Ruszkiewicz responded, "I feel that if a jury would hear me talk rather than a lawyer talk for me and would see my actions in a court of law, they would know that I am not that kind of a person that would go and abuse this young lady, whom I respected and felt very deeply for." Commissioner Pike then asked, "You understand that a lawyer might assist you to discover legal defenses to this lawsuit that you're not aware of?" Ruszkiewicz replied, "I understand that." Ruszkiewicz then stated that he was having trouble getting certain records regarding the victim. Commissioner Pike told Ruszkiewicz that a lawyer could also help him with that matter. Ruszkiewicz again responded that he understood.

¶ 13. After the State rested at the preliminary hearing, Commissioner Pike again advised Ruszkiewicz that he was under no obligation to offer any evidence or testimony and that any damaging evidence he presented could be used against him at the time of trial. The assistant district attorney also warned Ruszkiewicz that if he testified, he would be facing "pointed, direct, specific cross-examination regarding specific allegations contained in the Complaint." Commissioner Pike again urged Ruszkiewicz to consult a lawyer, stating:

> I urge you again to get a lawyer to assist you in this matter. This is a very serious matter. As I stated earlier, you could potentially go to prison for up to 20 years as a result of this incident.[2] And I certainly don't think you should be making any legal mis-

---

[2] Actually, Ruszkiewicz's total exposure was forty years. However, he makes no complaint about this misstatement by the court commissioner. And, in any event, Ruszkiewicz was

steps if you can avoid them. And I think the lawyer may assist you. You're not required to keep that lawyer throughout the entire trial, or at any point in the proceedings you can always again go back and try the case on your own. But I would urge you most seriously to consider having a lawyer to assist you with regard to your proceeding. But that decision is yours.

Ruszkiewicz replied, "I have already made that decision." With that, Ruszkiewicz testified.

¶ 14. Although his testimony initially strayed into irrelevant matters for purposes of a preliminary hearing, Commissioner Pike eventually steered Ruszkiewicz to the events related to the counts charged in the complaint. He testified that the events charged in the complaint were "something that I had thought about—because of the relationship, it might help the relationship and might help [C.W.] in her situation with her boyfriend who abused her. And so this was not something that I did out of passion or out of self-gratification, et cetera."

¶ 15. Commissioner Pike then asked Ruszkiewicz whether he was contending that C.W. had consented to his conduct. Ruszkiewicz responded: "She did not consent—Well, let me put it this way. When we—she did not consent to what we did because I never explained to her what I was intending to do at the time. But she did—she did in a sense—how would I say—accept." Later, when asked about force or threat of force, Ruszkiewicz testified that he used "[f]orce in the sense of restraint."

¶ 16. At the conclusion of the preliminary hearing, Commissioner Pike found probable cause to

correctly informed about the potential penalties at the initial appearance and at the arraignment.

believe that Ruszkiewicz had committed a felony and again urged Ruszkiewicz to consult with a lawyer of his own choosing or to contact the public defender's office. The State then filed an information alleging the same counts charged in the complaint. Ruszkiewicz pled not guilty.

¶ 17. The next proceeding was a bail modification hearing before Commissioner Binn. At this hearing, Ruszkiewicz again strayed into the facts of the underlying charges. He challenged a portion of the investigative reports that stated he had injured C.W. He stated:

> I would just like to read one part of that statement which I think probably is accurate, probably the most accurate part of the statement and that part states that [C.W.] stated that during the struggle she hit her head against the stove causing bruises on her—for her and bruise[s] on hips and buttocks were from falling and hitting the cupboard counters, also was hurt during the struggle on the floor.
>
> In other words bruises she had were not inflicted by me directly, they were—they occurred indirectly when I tried to restrain her and keep her in the room so I would be able to talk to her, in other words not caused directly by me—indirectly by me on this person.

¶ 18. At his arraignment before the trial court, Ruszkiewicz again persisted in speaking to the merits of the charges. The trial court cautioned that those matters were reserved for trial. Ruszkiewicz then confirmed his prior not guilty pleas and requested a jury trial. The court informed Ruszkiewicz of his right to be represented by an attorney of his own choosing or an appointed attorney if he qualified financially. The

court also advised Ruszkiewicz that "at times lawyers are able to determine defenses for you that you may not be aware of based simply upon their education and their experience and their training." The court repeatedly urged Ruszkiewicz to seek counsel. When the court asked Ruszkiewicz whether he wished to consult with the state public defender's office, Ruszkiewicz replied that he did not and that he wished to represent himself.

¶ 19. Later, Ruszkiewicz brought another bail modification motion in the trial court. At one point during his hearing, Ruszkiewicz restated the argument he had made at the preliminary hearing, contending that "[t]he bruises, et cetera, are not inflicted by me directly. Those were bruises that were from me trying to restrain her from leaving the room so I could speak with her."

¶ 20. Ruszkiewicz also brought pretrial discovery motions seeking the production of certain police and medical records concerning C.W. Ruszkiewicz believed that these records would show that C.W. had provided blood samples to these agencies. Ruszkiewicz stated that C.W. had told him that she was "low in blood plastids, which would make her bruise very easily." He argued that any testing of these samples would confirm this condition. The trial court ruled that Ruszkiewicz could question C.W. regarding this matter at trial, but the court denied the request for production of the records.

¶ 21. Ruszkiewicz pursued his "nurturing" theory of defense at the jury trial, both in his testimony and in his arguments to the jury. He did not deny that he had inserted his finger into C.W.'s vagina and rectum during the Tuesday episode and into C.W.'s vagina during the Friday episode. However, he contended that

the episodes were not sexual, but rather a means of establishing where he was in his relationship with C.W. However, Ruszkiewicz also agreed that he wanted to "pleasure" C.W. and find out if she was a virgin. He explained his use of the castor oil as a "come-on" to C.W., stating that it would make their relationship more "meaningful" and it would show to C.W. that Ruszkiewicz was not "all words and all talk." He also stated that he tried to get C.W. to drink the castor oil because of a bowel condition she had reported to him.

¶ 22. Importantly, Ruszkiewicz admitted both in his direct and cross-examination that he used force against C.W. in both episodes. However, he argued that the force was only for purposes of restraining C.W., not for purposes of sexual gratification on his part. He also said that the force was part of the "nurturing" process for C.W.

¶ 23. The jury found Ruszkiewicz guilty of both counts. Following receipt of a presentence report, the trial court sentenced Ruszkiewicz to twenty years in prison on the first count and a consecutive probationary term of twenty years on the second count.

¶ 24. Finally represented by counsel, Ruszkiewicz brought a postconviction motion contending that the trial court had not made the necessary inquiries to establish that he had knowingly and voluntarily waived his right to counsel and was competent to represent himself. Specifically, Ruszkiewicz contended that the court had failed to conduct a formal hearing in accord with the procedure suggested by Wisconsin case law and Wis JI—Criminal SM–30. Based on the record in the case, the trial court rejected Ruszkiewicz's argument. The court ruled that Ruszkiewicz had waived his right to counsel with full knowledge of the benefits which counsel could provide and of the perils of pro-

ceeding pro se. The court also ruled that Ruszkiewicz was competent to represent himself. Ruszkiewicz appeals.

## DISCUSSION

### 1. Self-Representation

¶ 25. "The right to the assistance of counsel is necessary to ensure that a criminal defendant receives a fair trial, that all defendants stand equal before the law, and ultimately that justice is served." *State v. Klessig*, 211 Wis. 2d 194, 201, 564 N.W.2d 716 (1997) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)). A criminal defendant in Wisconsin is guaranteed this fundamental right to the assistance of counsel by Article I, § 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution as made applicable to the states by the Fourteenth Amendment. *See Klessig*, 211 Wis. 2d at 201–02. However, those provisions also give a defendant the right to conduct his or her own defense. *See id.* at 203. While this right is not expressly stated in the Sixth Amendment, it is necessarily implied by the structure of the Amendment. *See id.*

¶ 26. These two rights seemingly conflict and their interaction creates a dilemma for trial judges who are confronted with the unusual defendant who wants to conduct his or her own defense. *See id.* To assist in resolving this dilemma, the courts have set out the following principles. "When a defendant seeks to proceed pro se, the circuit court must insure that the defendant (1) has knowingly, intelligently and voluntarily waived the right to counsel, and (2) is competent to

proceed pro se." *Id*. 2d at 203 (citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993)). If these conditions are not satisfied, the trial court must prevent the defendant from self-representation because to do otherwise would deny the defendant the constitutional right to counsel. *See id*. at 203–04. If these conditions are satisfied, the trial court must allow the defendant to represent himself or herself, because to do otherwise would deny the defendant the constitutional right to self-representation. *See id*. at 204. In summary, the question turns on the defendant's knowing, intelligent and voluntary waiver of the right to counsel and on the defendant's competency to conduct the self-representation.

### a. Waiver of Counsel

¶ 27. "Whether a defendant has knowingly, intelligently and voluntarily waived his right to counsel requires the application of constitutional principles to the facts of the case . . . ." *Id*. This presents a question of constitutional fact which we review independent of the trial court's determination. *See id*. "Nonwaiver is presumed unless waiver is affirmatively shown to be knowing, intelligent and voluntary. The State has the burden of overcoming the presumption of nonwaiver." *Id*. (citation omitted).

¶ 28. The specific requirements for a valid waiver of counsel were set forth by our supreme court in *Pickens v. State*, 96 Wis. 2d 549, 563–64, 292 N.W.2d 601 (1980), *overruled in part by State v. Klessig*, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997):

Accordingly, we hold that in order for an accused's waiver of his right to counsel to be valid, the record must reflect not only his deliberate choice to pro-

ceed without counsel, but also his awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges he is facing and the general range of possible penalties that may be imposed if he is found guilty. Unless the record reveals the defendant's deliberate choice and his awareness of these facts, a knowing and voluntary waiver will not be found.

¶ 29. Although the *Pickens* court did not mandate a formal colloquy, the court did state that the best way to make this record was "for the trial court to conduct a thorough and comprehensive examination of the defendant as to each of the factors mentioned." *Id.* at 564. However, in *Klessig*, the supreme court took that next step. There the court stated, "[W]e mandate the use of a colloquy in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel." *Klessig*, 211 Wis. 2d at 206. WISCONSIN JI—CRIMINAL SM–30 sets out suggested procedures and colloquies that trial courts should follow when faced with a self-representation situation.

¶ 30. We take note that the trial in this case occurred before the supreme court's decision in *Klessig*. Therefore, the trial court was not bound by the *Klessig* mandate. Nonetheless, the court did have the benefit of the *Pickens* recommendation, but it did not follow that procedure. Had that been done, the record would be much cleaner and more focused on the issue. However, the absence of a formal, capsulated hearing and colloquy under *Pickens*, *Klessig* and WIS JI—CRIMINAL SM–30 is not fatal to this case. We say that because the collective, ongoing record made by Commissioner Binn, Commissioner Pike and the trial court on the subject of

Ruszkiewicz's self-representation constitutes the functional equivalent of the colloquy now mandated by *Klessig*.[3]

¶ 31. We will not repeat here the extensive history of this case that we have already recited. Suffice it to say that this history demonstrates that both court commissioners and the trial court repeatedly advised Ruszkiewicz of his right to private or appointed counsel and urged him to seek counsel. We count twelve instances when Ruszkiewicz was expressly advised or reminded of his right to counsel. Never once did Ruszkiewicz respond that he wanted counsel. To the contrary, we count at least six instances in which Ruszkiewicz affirmatively responded that he wanted to represent himself.[4]

---

[3] The concurring opinion in *State v. Klessig*, 211 Wis. 2d 194, 222, 564 N.W.2d 716 (1997) (Abrahamson, C.J., concurring), questioned if a circuit court could meaningfully determine nunc pro tunc that a defendant had knowingly and voluntarily waived the right to counsel at the original proceeding. We do not believe our holding implicates that concern because we hold that the requisite pretrial colloquy under *Klessig* took place, albeit in a series of exchanges rather than in a formal, capsulated hearing. However, the concerns expressed by the concurring opinion in *Klessig* are implicated in our discussion of the competency issue. *See infra* pp. 14–15.

[4] At one point prior to trial, Ruszkiewicz indicated to the trial court that he had consulted with a private attorney, but decided not to retain the attorney because it would cost too much. However, when questioned further on the matter, Ruszkiewicz said that his decision to proceed pro se was not about money and he did not claim that he was indigent. Rather, he reaffirmed his earlier statement that he wanted to speak directly to the jury and not through a lawyer.

¶ 32. Equally important, during some of these exchanges the court commissioners and the trial court also warned Ruszkiewicz about the difficulties and disadvantages of self-representation. At the preliminary hearing, Commissioner Pike urged Ruszkiewicz to obtain a lawyer so that he could avoid making any "legal missteps." Ruszkiewicz responded that he had "already made that decision." At the arraignment, the trial court urged Ruszkiewicz to obtain a lawyer and advised him that "lawyers are able to determine defenses for you that you may not be aware of based . . . upon their education and their experience and their training." When the court asked Ruszkiewicz whether he wished to consult with the State Public Defender's Office, Ruszkiewicz replied that he did not and affirmatively added that he wished to represent himself.

¶ 33. Based on this collective record, we find as a matter of constitutional fact that Ruszkiewicz knowingly, intelligently and voluntarily waived his right to counsel.[5]

### b. Competency for Self-Representation

¶ 34. In addition to knowingly and voluntarily waiving the right to counsel, a defendant must be competent to conduct a self-representation defense. *See Klessig*, 211 Wis. 2d at 203. In *Godinez*, the Supreme Court held that this standard was the equivalent of the standard for competency to stand trial. *See Godinez*,

---

[5] Ruszkiewicz makes no claim that he was unaware of the seriousness of the charges and the potential penalties he faced if convicted. *See Pickens v. State*, 96 Wis. 2d 549, 563, 292 N.W.2d 601 (1980), *overruled in part by State v. Klessig*, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997).

509 U.S. at 398. However, the Court recognized that the states are free to adopt a higher standard. *See id.* at 402. In *Klessig,* our supreme court confirmed the standard set out in *Pickens* and further stated that it represented a higher standard than that for competency to stand trial. *See Klessig,* 211 Wis. 2d at 212.

¶ 35. In making a competency determination under this higher standard, a trial court must consider factors such as the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect the defendant's ability to communicate a possible defense to the jury. *See id.* The *Klessig* court stressed that this determination "should not prevent persons of average ability and intelligence from representing themselves unless 'a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.' " *Id.* (quoting *Pickens,* 96 Wis. 2d at 569). This determination rests to a large extent upon the judgment and experience of the trial judge. *See id.*

¶ 36. As with the waiver issue, the trial court did not conduct a formal, capsulated hearing as recommended by *Pickens.* However, unlike the waiver issue, we cannot point to any "ongoing colloquy" or other portions of the record where the factors bearing on Ruszkiewicz's competency to conduct his own defense were expressly addressed. When an adequate colloquy is not conducted, and the defendant raises the issue in a postconviction setting, the trial court "should first determine whether it can make an adequate and meaningful nunc pro tunc inquiry into the question of whether [the defendant] was competent to proceed pro

se." *Klessig*, 211 Wis. 2d at 213. If the court concludes that it can conduct such a meaningful inquiry, it must hold an evidentiary hearing. *See id.* If the court concludes that it cannot conduct such a meaningful inquiry, it must order a new trial. *See id.*

¶ 37. Here, the trial court did not expressly determine whether it could conduct such a meaningful hearing. However, the very fact that the court conducted the postconviction hearing and the fact that the court ultimately addressed the relevant factors in assessing whether Ruszkiewicz was competent to represent himself tell us that the court believed that a meaningful inquiry could be conducted on this issue. We thus turn to the merits.

¶ 38. On review, the trial court's competency determination will be upheld "unless totally unsupported by the facts apparent in the record." *Pickens,* 96 Wis. 2d at 570. This is the equivalent of the clearly erroneous test. *See State v. Garfoot,* 207 Wis. 2d 214, 224, 558 N.W.2d 626 (1997). We give this deference because the trial judge is in the best position to observe the defendant's conduct and demeanor and to evaluate the defendant's ability to present at least a meaningful defense. *See Pickens,* 96 Wis. 2d at 568.

¶ 39. Ruszkiewicz does not contend that he lacked the necessary education, literacy or fluency in English to represent himself. *See id.* at 569. Indeed, such arguments would have been to no avail because the trial court determined at the postconviction hearing that Ruszkiewicz was intelligent, literate and fluent. And these findings are borne out by the record, both in terms of Ruszkiewicz's written filings and his oral presentations. Although his persistence in choosing to represent himself proved frustrating to the court

commissioners and the trial court, Ruszkiewicz was not an unruly or unmanageable pro se defendant. To the contrary, he made his presentations in a cogent and civil manner.

¶ 40. Instead, Ruszkiewicz claims that he had a psychological disability which significantly affected his ability to communicate a possible defense to the jury. *See id.* He reasons that his "nurturing" theory of defense reflected this disability and suggests the possibility of the more tenable defense of mental disease or defect (NGI). As a subset of this argument, Ruszkiewicz also argues that the trial court should have ordered an evaluation to determine if such a defense would have been viable.

¶ 41. We cannot deny that Ruszkiewicz's "nurturing" theory of defense represented a distorted view about his relationship with C.W., and perhaps women in general. But we cannot say that these beliefs interfered with his ability to present his defense or that his theory of defense was so outlandish as to be meaningless. *See Klessig*, 211 Wis. 2d at 212. This is particularly so when we view Ruszkiewicz's theory of defense against the strength the State's case. Before the complaint was even filed in this case, the State had marshaled an extremely strong case against Ruszkiewicz. C.W. had accused him of the assaults. The neighbor corroborated these reports and also reported seeing bruises on C.W. When the police interviewed C.W., she displayed bruises on her face and body. The police took photographs of these injuries. Most importantly, Ruszkiewicz had provided the police with a statement functionally admitting all the necessary elements of second-degree sexual assault. Ruszkiewicz stated that he had performed the acts C.W. had reported, that he had used force to accom-

plish those acts and that he did not have C.W.'s consent to perform those acts.

¶ 42. Against this formidable evidence, Ruszkiewicz set out to convince the jury that he harbored true affection for C.W. and that he was not the kind of person who would abuse her. The bottom line of his "nurturing" defense was that he did not intend to harm C.W. in either of the episodes and his actions were not undertaken for purposes of his sexual gratification. In light of the State's strong case, we cannot say that Ruszkiewicz's claim that he did not intend to harm C.W. was meaningless. His theory of defense may have been his only legal refuge. We have seen represented defendants grasp at lesser straws.

¶ 43. We also note that a defendant's unusual conduct or beliefs do not necessarily establish incompetence for purposes of self-representation. In *Pickens*, the defendant exhibited beliefs that were "somewhat out of the ordinary" and made references to astrology and religion which may have antagonized some members of the jury. *See Pickens*, 96 Wis. 2d at 570. Nevertheless, the supreme court held that this did not reflect a mental defect which prevented the defendant from presenting his defense. *See id.*

¶ 44. We also reject Ruszkiewicz's claim that his unusual theory of defense reflected a psychological disability supportive of a viable NGI defense. We first note that this case is bereft of any expert evidence that Ruszkiewicz has such a disability. Moreover, assuming for the sake of argument that such a condition exists, it demonstrates at best Ruszkiewicz's distorted belief regarding his relationship with C.W. specifically and women generally. But this does not even remotely satisfy the test for a successful NGI defense. WISCONSIN STAT. § 971.15(1) requires that "as a result of mental

disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law."

■

¶ 45. We conclude by returning to our standard of review. We give deference to the judgment, experience and better position of the trial judge to evaluate the defendant's conduct and demeanor. *See Pickens*, 96 Wis. 2d at 568. We uphold the trial court's finding that Ruszkiewicz "demonstrated no physical or psychological disability, which would significantly affect his ability to communicate possible defenses to the jury, nor did he indicate any such disability." We affirm the court's ultimate finding that Ruszkiewicz was competent to represent himself.

### 2. *C.W.'s Medical and Police Records*

¶ 46. Ruszkiewicz next argues that the trial court erred by refusing to order the production of C.W.'s police and medical records. As previously noted, Ruszkiewicz believed that these records might reveal that C.W. had provided the agencies with a blood sample. He reasoned that any testing of these samples would confirm C.W.'s statement to him that she had a medical condition that caused her to bruise easily. The trial court refused to order the production of the records, but did allow Ruszkiewicz to question C.W. about this alleged statement at trial.[6]

■

¶ 47. Ruszkiewicz's argument is a nonstarter given his testimony and arguments at the jury trial. As

---

[6] At the trial, C.W. denied making this statement to Ruszkiewicz.

we have noted, Ruszkiewicz admitted that he had committed the acts of sexual intrusion against C.W. and that he had used force against C.W. in each episode. This was in keeping with his theory of defense that his acts of force were merely to restrain C.W. so that he could reason with her, not to accomplish a sexual assault. Therefore, any evidence of a medical condition demonstrating that C.W. bruised easily was of no consequence to the trial of this case. The State did not charge Ruszkiewicz with bruising C.W.; it charged him with sexually assaulting her. Proof of second-degree sexual assault does not require proof of bruising; rather, it requires proof of "use or threat of force or violence." WIS. STAT. § 940.225(2)(a). In short, the evidence that Ruszkiewicz sought to obtain was not relevant or material to the issues in this case.[7]

## CONCLUSION

¶ 48. Based upon the totality of the pretrial record in this case, we find as a constitutional fact that Ruszkiewicz waived his right to counsel. We also uphold the trial court's finding that Ruszkiewicz was competent to conduct his own defense. Finally, we hold that the trial court did not err in rejecting Ruszkiewicz's request for C.W.'s medical and police

---

[7] In addressing this issue, the State argues that Ruszkiewicz used the wrong procedures in attempting to obtain this evidence or, alternatively, that any error relating to this issue was harmless in light of Ruszkiewicz's own testimony. Because we hold that the proffered evidence was not admissible, we do not speak to these arguments. However, we note that the evidence which the State relies upon in arguing harmless error is the same evidence which we rely upon in demonstrating that the proffered evidence was not relevant.

records because such evidence would not have been admissible.

*By the Court.*—Judgments and order affirmed.