**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 9, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1248-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF169

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOSEPH P. DEFILIPPO,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Joseph DeFilippo appeals from a judgment, entered after a jury trial, convicting him of several offenses arising out of a

domestic violence incident, and a subsequent incident with his neighbor. DeFilippo argues that he did not properly waive his right to counsel before trial and that the circuit court erred by denying his request—first made after jury selection—to obtain counsel. We conclude that DeFilippo waived his right to counsel before trial and that he later forfeited his right to counsel through his manipulative and disruptive conduct. Accordingly, we affirm.

## BACKGROUND

¶2     In March 2019, the State charged DeFilippo with one count of false imprisonment as an act of domestic abuse; one count of misdemeanor battery as an act of domestic abuse; three counts of disorderly conduct, with two of those counts being acts of domestic abuse; and one count of misdemeanor bail jumping. The four charges involving domestic abuse stemmed from an incident where DeFilippo, among other things, held down his former roommate, slapped her face, and held his forearm over her throat as she attempted to move her belongings out of DeFilippo's home. The two remaining charges arose out of disturbing and profane statements that DeFilippo made to his neighbor while DeFilippo was out on bond.

¶3     At his initial appearance, DeFilippo told the court commissioner that he did not want time to speak to an attorney. DeFilippo later conceded that he did not "know the laws as well as you guys," but he stated he "like[s] to do research on this kind of stuff" and he read "the prosecutor's hand book … over and over." DeFilippo also told the court commissioner, "I've been in court here. I get traffic tickets all the time. I'm not—I'm not perfect, but I've never missed a court date in my life, ever, and I've had several of them. I'm defending myself." In addition, DeFilippo mentioned that he "ha[d] professional licenses."

¶4    One week later, DeFilippo appeared at his preliminary hearing, again without counsel.[1]  At the beginning of the hearing, the circuit court confirmed that DeFilippo understood his right to counsel, the process for obtaining counsel at no cost or at a reduced rate, and the benefits of having counsel.  DeFilippo then confirmed that he did not want to "explore the option of having an attorney" and that no one had made any threats or promises to cause him to waive his right to an attorney.  At the end of the hearing, the court bound DeFilippo over for trial and again informed him about the benefits of counsel and the process for obtaining counsel.  The court asked DeFilippo if he wanted an attorney going forward, to which DeFilippo responded: "I don't qualify for a public defender ….  And I refuse to pay a penny to any other type of lawyer because there is not going to be any negotiations, I'm going to be found not guilty …."

¶5    The circuit court subsequently held an arraignment.  The court began the hearing by questioning DeFilippo about whether he understood that he had a constitutional right to counsel; whether he understood the potential advantages of having counsel; whether he understood that counsel could be appointed for him if he could not afford counsel; and whether he was "making [the] decision [to waive counsel] freely, voluntarily, and intelligently."  DeFilippo responded affirmatively to each of these questions.  DeFilippo then waived his right to have the Information read to him, stating that he had read through it and understood it.  Later in the hearing, DeFilippo informed the court that he had professional licenses in both Wisconsin and Illinois to serve as a "mortgage loan originator."

---

[1] The Honorable Gregory B. Gill, Jr., presided over the preliminary hearing.  The Honorable Mark J. McGinnis presided over all of the remaining circuit court proceedings.

DeFilippo acknowledged, however, that he had been unemployed for a couple years because of his depression.

¶6    One week before trial, the circuit court held a pretrial conference. The court started the hearing by noting that court staff had received a "very rude, loud, abrasive, obnoxious, [and] disrespectful" phone call from DeFilippo the prior week. The court explained that it was addressing the issue because it wanted to make its expectations clear, to ensure that it did not happen again, and to ensure that DeFilippo "[does not] conduct [himself] like that here in this courtroom."

¶7    The circuit court proceeded to address the State's motions in limine. During a discussion of the State's first motion, DeFilippo objected to the State calling any witnesses at trial because the State had filed its witness list one day after the deadline previously set by the court—a deadline which was two weeks before the pretrial conference. When questioned by the court, DeFilippo claimed he had been harmed by the one-day delay because he "did not have time to prepare" and he did not expect the investigating police officers or his former roommate—the victim of several of DeFilippo's offenses—to testify at trial. The court found that DeFilippo was being "unreasonable" and that his expectations regarding the witnesses were "extremely unreasonable especially with how intelligent [he] seem[ed] to be and as much as [he] portray[ed himself] as being on top of this case."

¶8    Midway through the hearing, DeFilippo said he wanted to call "a couple witnesses" at trial—despite previously stating he would not call any—but he resisted the circuit court's attempts to identify those witnesses. The court warned DeFilippo:

4

> I have expectations on what happens and I expect both sides to follow them; and if you deviate, there's going to be a consequence.
>
> I prefer not to give you that consequence in front of the jury. Part of that means listen to what I ask and answer it. If we are in front of the jury and we start doing this, you are not going to look good. You are going to look like a jerk. You are arguing with a judge. You are being disrespectful. You are looking down. You are making facial expressions as if this is some joke.

The court then told DeFilippo that if there was a possibility he would call witnesses at trial, he needed to identify those witnesses immediately. The court clarified that DeFilippo would not be required to call any witnesses that he identified. DeFilippo responded that he did not have any witnesses. At the end of the hearing, the court reminded the parties several times that they would meet at 8:00 a.m. on the first day of trial.

¶9 Despite the reminder, DeFilippo arrived twenty-seven minutes late to trial. Shortly after DeFilippo arrived, the circuit court proceeded with voir dire and, in the course of doing so, instructed the jury that

> Mr. De[F]ilippo has made the decision to represent himself in this case. So every defendant in a criminal case has a constitutional right to have a lawyer. Mr. De[F]ilippo and I have met on several occasions; and I have had colloquies with him, conversations with him. And I have reached a determination that he is making a decision freely, voluntarily, intelligently to waive his right to have a lawyer and represent himself in this case.
>
> Mr. De[F]ilippo is making that decision. That's what he wants to do, and I find that he's competent and has made that decision based on those grounds. So he's allowed to do that in this case.

¶10 After the jury was selected and exited the courtroom, the circuit court addressed DeFilippo's late arrival. The court noted that it "had some

5

contentious pretrial conferences" with DeFilippo and that DeFilippo's tardiness was "not acceptable." DeFilippo denied that he was late, stating "[e]verything says 8:30 online" and "[s]how me where it says I am going to be here at 8:00." The court warned DeFilippo not to "raise [his] voice." DeFilippo responded that he was standing up for himself and that he was "ready to do one thing really quick; but we will see, you know?" DeFilippo declined to explain what he meant by the comment, and the court noted that DeFilippo's comment seemed to be a potential threat.

¶11 The circuit court told DeFilippo that it "want[ed him] to have a fair trial," but it thought DeFilippo was "intentionally violating court orders." DeFilippo maintained that "[he] was never told to be [in court] at 8:00." The court characterized DeFilippo's comments as "outrageous." It noted that DeFilippo had been informed of the 8:00 a.m. start time in writing and several times orally during the pretrial conference.

¶12 The circuit court then addressed the admissibility of evidence that DeFilippo had provided to the State at the beginning of jury selection, deeming some of it admissible and some of it inadmissible. The court asked DeFilippo if he understood "what's going to be allowed in," to which DeFilippo said, "Everything is going to be allowed in." The court responded, "Okay. That's not responsive so I have now said what's going to come in on that, and I expect you to follow those rules."

¶13 As the circuit court asked for the jury to be brought back into the courtroom, the following exchange between the court and DeFilippo occurred:

> THE DEFENDANT: Hold on, your Honor, for a second. I am going to respectfully ask you to recuse yourself from

> this case for past statements made. I am not going to go forward today.
>
> THE COURT: That motion is denied. Bring the jury in.
>
> THE DEFENDANT: Okay. Well, I wanted an attorney. You never gave me a colloquy today. I am not going to go forward with the trial.
>
> THE COURT: Hold on one second.
>
> THE DEFENDANT: You can't force me to. I want an attorney. You can't force me to go forward. You didn't give me a pretrial this morning. I'm not going to even say another word. I invoke my Sixth Amendment right.

Upon further questioning by the court, DeFilippo admitted that this instance was the first time he had ever expressed a desire to obtain counsel and that he had made no effort to obtain counsel before trial. The State encouraged the court to deny DeFilippo's request, noting that the jury had already been selected and that DeFilippo had previously stated his desire to represent himself.

¶14 The circuit court asked DeFilippo if he wanted to state anything else for the record before the jury returned and the trial began. DeFilippo responded that he did not want to go forward with the trial and that he "only invoked [his] right today because [he] fe[lt] like … [he was] being treated unfairly in the context of procedure." The court took a brief recess before addressing DeFilippo's request for counsel.

¶15 Upon returning, the circuit court stated that it had anticipated—based on DeFilippo's prior conduct and demeanor in court—that DeFilippo "would do things intentionally and purposely to disrupt the trial and to prevent it from going smoothly." The court found DeFilippo's comments about not being informed of the correct start time to be "untruthful" and stated "they reflect a deliberate, intentional, purposeful misinformation to the [c]ourt." The court also

7

found that DeFilippo's comments were "an effort … to stall, [and] to interfere with the administration of justice."

¶16    The circuit court recognized that DeFilippo had repeatedly waived his right to counsel by stating on the record that he did not want an attorney and that he was going to represent himself.  The court noted that DeFilippo "had a colloquy with the court commissioner, with Judge Gill, and with [the court]; and on each and every one of those occasions [he was] found to be freely, voluntarily, and intelligently waiving [his] right to counsel."  The court also found that DeFilippo's sudden decision to request counsel was "disingenuous"; "manipulative"; and "primarily done with a direct effort to interfere with this case, the processing of the case, and the administration of justice."  Citing *State v. Suriano*, 2017 WI 42, 374 Wis. 2d 683, 893 N.W.2d 543, the court concluded that DeFilippo had forfeited his right to counsel through his "disruptive conduct," his "intent to delay," and the untimeliness of his request for counsel.

¶17    As the circuit court finished its remarks, the State informed the court that DeFilippo had mentioned, during the prior recess, that he was "going to cause a mistrial."  The court immediately asked DeFilippo if he had made such a comment.  Although DeFilippo initially resisted the court's questioning, he eventually answered: "Yes, because I don't know how else.  I don't want to continue, your Honor."  The court recognized that DeFilippo's comment to the prosecutor "clearly shows [his] intention … today."

¶18    The circuit court then brought the jury back into the courtroom and continued with the trial.  DeFilippo was disruptive throughout the trial, and the court found him in contempt four separate times.  The jury ultimately found DeFilippo guilty on all counts.  At DeFilippo's request, the court appointed

counsel to represent him at sentencing. The court later imposed a prison sentence and withheld sentence on some of the charges.

¶19   DeFilippo now appeals, arguing that his waiver of counsel was insufficient because the circuit court never found him competent to proceed pro se and that the court erred by denying his request for counsel after jury selection had occurred. Additional facts will be provided as necessary below.

## DISCUSSION

### I.  Waiver of the right to counsel

¶20   Both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee a criminal defendant the right to the assistance of counsel. *State v. Klessig*, 211 Wis. 2d 194, 201-02, 564 N.W.2d 716 (1997). However, a defendant also has the constitutional right to self-representation. *Id.* at 203. Wisconsin courts "have often recognized the apparent tension between these two constitutional rights." *State v. Imani*, 2010 WI 66, ¶21, 326 Wis. 2d 179, 786 N.W.2d 40.

¶21   A circuit court must permit a defendant to represent him- or herself if the court finds that the defendant: (1) has knowingly, intelligently and voluntarily waived the right to counsel; and (2) is competent to proceed pro se. *Id.* In determining whether a defendant has knowingly, intelligently and voluntarily waived the right to counsel, the court must conduct a colloquy designed to ensure that the defendant:

> (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the

> general range of penalties that could have been imposed on
> him.

*Id.*, ¶23 (citation omitted). Whether a defendant has knowingly, intelligently and voluntarily waived the right to counsel is a question of constitutional fact. ***State v. Ruszkiewicz***, 2000 WI App 125, ¶27, 237 Wis. 2d 441, 613 N.W.2d 893. In resolving a question of constitutional fact, we review the circuit court's findings of historical and evidentiary facts under a clearly erroneous standard, but we independently apply constitutional principles to those facts to determine whether a constitutional right was violated. ***Suriano***, 374 Wis. 2d 683, ¶20.

¶22 In deciding whether a defendant is competent to proceed pro se, a circuit court "should consider factors such as 'the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury.'" ***Klessig***, 211 Wis. 2d at 212 (citation omitted). The competency determination, however, "should not prevent persons of average ability and intelligence from representing themselves unless 'a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.'" ***Id.*** (citation omitted).

¶23 Generally, a circuit court's finding that a defendant is competent to proceed pro se must appear in the record. ***Id.*** at 212-14. A court's competency finding will be upheld "unless totally unsupported by the facts apparent in the record." ***Ruszkiewicz***, 237 Wis. 2d 441, ¶38 (citation omitted). If the court fails to make an explicit competency finding, an appellate court may remand for the circuit court to determine whether "it can make an adequate and meaningful nunc pro tunc inquiry into … whether [the defendant] was competent to proceed pro se." ***Klessig***, 211 Wis. 2d at 213. However, "such an evidentiary hearing may

10

not be necessary in every case" where the defendant's competency is clear from the record. *Id.* at 214 n.9.

¶24    DeFilippo argues that "[t]here was no finding by any judicial official that [he] was competent to represent himself" and that the circuit court failed to consider the competency factors on the record. He also contends that we should remand for the court to consider the issue of competency because the record is insufficient to conclude that he was competent to represent himself. DeFilippo also asserts, for the first time in his reply brief, that his outbursts at trial suggest that he "had a personality disorder or emotional problems that prevented him from being competent to represent himself."

¶25    Contrary to DeFilippo's arguments, the circuit court explicitly found that DeFilippo was competent to represent himself. During voir dire, the court told the jury that DeFilippo wanted to represent himself, that he freely, voluntarily and intelligently waived his right to counsel, and that "he's *competent*." (Emphasis added.) The court made this competency finding before the jury was selected and before DeFilippo ever challenged his waiver of counsel.

¶26    The circuit court could rationally make such a competency finding based on the facts in the record. DeFilippo informed the court at his arraignment that he had professional licenses in Wisconsin and Illinois as a mortgage loan originator. In addition, DeFilippo's pretrial interactions with the court show that he was fluent in English and had some familiarity with the law. Indeed, DeFilippo stated at his arraignment that he was charged "with a felony and five misdemeanors," that the pending charges could affect his ability to obtain employment, and that he had reviewed "a hundred cases" regarding the timeliness of charging decisions. DeFilippo also sought to exclude witnesses—albeit

11

unsuccessfully—by challenging the State's failure to comply with the court's disclosure deadline and by citing a portion of the Wisconsin Statutes. From these interactions, the court could find that DeFilippo possessed the "average ability and intelligence" needed to competently represent himself. *See id.* at 212.

¶27    Further, the record clearly establishes DeFilippo's competency to represent himself. *See id.* at 214 n.9. Again, DeFilippo's pretrial interactions with the circuit court suggested that he had some level of education as a mortgage loan originator, that he spoke English fluently, and that he had some familiarity with the law. The presentence investigation report (PSI) also reveals that DeFilippo obtained a bachelor's degree from a four-year university as well as some additional schooling at technical colleges. The PSI author noted that DeFilippo "is able to comprehend written and verbal communication and had no difficulties completing the [PSI] questionnaire."

¶28    Despite DeFilippo's suggestion in his reply brief that his outbursts at trial might indicate he has "a personality disorder or emotional problems," he never directly argues that he was incompetent to proceed pro se. He also fails to explain how any personality disorder or emotional problems might have prevented him from providing a meaningful defense. Accordingly, DeFilippo's argument regarding his mental and emotional health is undeveloped and need not be further addressed. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992); *see also **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (recognizing that a party is not permitted to raise an issue for the first time in its reply brief).

¶29    Finally, although DeFilippo does not directly challenge the circuit court's determination that he knowingly, intelligently and voluntarily waived his

right to counsel, we note that the court conducted a sufficient colloquy to make that decision. During the preliminary hearing, the court conducted a colloquy ensuring DeFilippo knew that he had a right to counsel, the benefits of counsel, and the possibility of having counsel appointed. The court also ensured that DeFilippo wanted to go forward by representing himself. At the arraignment, the court again engaged DeFilippo in a colloquy regarding his right to counsel, asking whether DeFilippo understood that right, the benefits of counsel, and the possibility of having counsel appointed. After discussing this information, DeFilippo confirmed that he wanted to represent himself. Shortly thereafter, the court confirmed that DeFilippo had read and understood the Information, which contained the charges and the possible penalties for those charges. Under these circumstances, the court's colloquy was sufficient to ensure that DeFilippo knowingly, intelligently and voluntarily waived his right to counsel.

## II. Forfeiture of the right to counsel

¶30 DeFilippo next argues that the circuit court erred by failing to adjourn the trial upon his request for counsel after jury selection had occurred. He renews his claim that the court never found him competent to proceed pro se, and he faults the court for not inquiring further into DeFilippo's competency as the proceedings progressed. He also criticizes the court for not warning him that an untimely request for counsel would result in his forfeiture of counsel.

¶31 Absent a voluntary waiver of counsel, a defendant may involuntarily lose his or her right to counsel through conduct constituting a forfeiture of that right. *Suriano*, 374 Wis. 2d 683, ¶¶22, 24. A defendant may forfeit the right to counsel if the circuit court "becomes convinced" that the defendant's conduct is frustrating "the orderly and efficient progression of the case." *Id.*, ¶24 (citation

omitted).    As relevant here, forfeiture can occur due to the defendant's: (1) manipulative and disruptive behavior; (2) defiant attitude and repeated choices that result in delay; or (3) physical or verbal abuse directed at counsel or the court.  ***Id.***  Whether a defendant has forfeited his or her right to counsel is a question of constitutional fact.  ***Id.***, ¶20.

¶32    Here, the circuit court found that DeFilippo's decision to request counsel was disingenuous and primarily done with a direct effort to interfere with the processing of his case and the administration of justice.  The court also found that DeFilippo was manipulative in his handling of the case and that he had been disruptive.  These findings are not clearly erroneous.  Throughout the pretrial proceedings, the record demonstrates that DeFilippo used sarcasm, raised his voice, interrupted and spoke over the court, provided nonresponsive answers to the court's questions, made disrespectful gestures and facial expressions, made remarks that could be perceived as threats, gave the State evidence at the last minute just before jury selection, and continuously argued issues that the court had already decided.[2]    In addition, DeFilippo arrived approximately twenty-seven minutes late to his jury trial, despite being informed both verbally and in writing of the correct start time.

¶33    The circumstances surrounding DeFilippo's request for counsel also support the circuit court's findings.    Throughout the pretrial proceedings,

---

[2] DeFilippo argues in his reply brief that the State's forfeiture argument improperly relies on his disruptive conduct that occurred after the circuit court determined that he forfeited his right to counsel.  Even if we only consider DeFilippo's conduct before the court's forfeiture decision, that conduct still supports the court's finding that DeFilippo was manipulative, disruptive, and sought to delay the trial.  Accordingly, we limit our discussion to only DeFilippo's disruptive conduct before the court's decision.

14

DeFilippo unequivocally maintained that he did not want the assistance of counsel, and he never expressed any desire to obtain counsel. Even when DeFilippo grew frustrated with the court's decisions, DeFilippo first requested that Judge McGinnis recuse himself from the case. Only after Judge McGinnis denied that request did DeFilippo request an attorney. In doing so, he also repeatedly stated that the court could not make him proceed with the trial. Then, when the court took a short recess, DeFilippo told the prosecutor that he intended to cause a mistrial if he were required to proceed. The court could reasonably find from these facts that DeFilippo was invoking his right to counsel in order to delay and disrupt the trial.

¶34 We agree with the circuit court's conclusion that DeFilippo forfeited his right to counsel through his conduct. DeFilippo's handling of the case and his request for counsel were manipulative and disruptive and frustrated "the orderly and efficient progression of the case." *See id.*, ¶24.

¶35 DeFilippo's arguments to the contrary are misplaced. As already discussed, the circuit court found DeFilippo competent to proceed pro se. In addition, even if DeFilippo's conduct in the pretrial proceedings could have suggested that he was not competent to represent himself, the court could still reasonably find that DeFilippo was competent based on his education and communication skills. In fact, the court did find DeFilippo competent after the pretrial proceedings because the court stated during voir dire that it had met with DeFilippo "on several occasions" and "[found] that he's competent."

¶36 Despite DeFilippo's criticism that the circuit court did not warn him that he might lose his right to counsel based upon his conduct, a court is not required to give a warning before concluding that the defendant forfeited the right

to counsel. *See id.*, ¶33. Indeed, such a requirement would be difficult in a situation, such as here, where the defendant repeatedly told the court that he did not want an attorney before abruptly refusing to go forward with a trial without an attorney. In addition, the court repeatedly warned DeFilippo that his improper behavior would be sanctioned. The court's failure to earlier warn DeFilippo that he could forfeit his right to counsel did not preclude it from applying forfeiture in this case.

¶37 Finally, DeFilippo suggests that forfeiture can be applied only in circumstances where the defendant has repeatedly discharged his or her attorney. We reject this argument for several reasons. First, DeFilippo cites no legal authority supporting such a narrow application of forfeiture to the right of counsel. *See Pettit*, 171 Wis. 2d at 646-47. Second, regardless of whatever distinction might exist between DeFilippo's conduct and a defendant who repeatedly discharges his or her attorney, the essence of that conduct is still the same: the defendant's abuse of the right to counsel has frustrated the orderly and efficient progression of the case. *See Suriano*, 374 Wis. 2d 683, ¶24.

¶38 Moreover, in a factually similar case, our supreme court upheld a circuit court's decision not to adjourn a trial in order to allow the defendant to obtain counsel. *See Pickens v. State*, 96 Wis. 2d 549, 571-72, 292 N.W.2d 601 (1980), *overruled on other grounds by Klessig*, 211 Wis. 2d at 206. In *Pickens*, the defendant waived his right to counsel but then attempted to withdraw that waiver on the second day of trial. *Id.* at 571. The supreme court recognized that "the right to counsel cannot be manipulated by a defendant as a tool for obstruction." *Id.* at 572. Although the court never discussed "forfeiture," the court noted that the defendant had previously "manipulated his right to counsel" to delay trial and that granting the defendant's request for counsel would have

16

resulted in further delay. *Id.* The court concluded that "[h]aving validly waived his right to counsel and elected to proceed *pro se*, the defendant was not entitled to obtain new representation once his trial was in progress." *Id.*

¶39 Like the court in ***Pickens***, we conclude that DeFilippo was not entitled to obtain representation after he waived his right to counsel and his trial began. His manipulative and disruptive conduct establishes that he forfeited his right to counsel when he attempted to withdraw his prior waiver of counsel.[3]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).

---

[3] DeFilippo initially addressed whether the circuit court's decision not to adjourn the trial was an erroneous exercise of discretion, but he did not address the forfeiture of counsel issue until his reply brief. DeFilippo clarifies in his reply brief that if we *reject* the State's forfeiture argument, then we should conclude that the court erroneously exercised its discretion by denying the adjournment. Accordingly, we need not address whether the court erroneously exercised its discretion because we agree with the State that DeFilippo forfeited his right to counsel. Regardless, the court did not erroneously exercise its discretion by denying the adjournment because it applied the correct law to the facts of record and reached a reasonable result. *See Zarnstorff v. Neenah Creek Custom Trucking*, 2010 WI App 147, ¶44, 330 Wis. 2d 174, 792 N.W.2d 594.