# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP959-CR |
| COMPLETE TITLE: | State of Wisconsin,<br><pre>        </pre>Plaintiff-Respondent,<br><pre>   </pre>v.<br>Jack M. Suriano,<br><pre>        </pre>Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 369 Wis. 2d 73, 879 N.W.2d 809
(WI Ct. App. 2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | April 27, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 2, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Door |
| JUDGE: | D. T. Ehlers |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, J. dissents, joined by BRADLEY, A. W., J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs and oral argument by *Colleen Marion*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Kevin M. LeRoy*, deputy solicitor general, with whom on the brief was *Daniel P. Lennington*, assistant attorney general, *Misha Tseytlin,* solicitor general and *Brad D, Schimel*, attorney general.

An amicus curiae brief was filed by *Kelli S. Thompson,* state public defender and *Joseph N. Ehmann,* regional attorney

manager, Wisconsin State Public Defender.   Oral argument by *Joseph N. Ehmann*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP959-CR
(L.C. No. 13CM249)

STATE OF WISCONSIN                    :          IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,                    **FILED**

    v.

**APR 27, 2017**

Jack M. Suriano,

Diane M. Fremgen
Clerk of Supreme Court

    Defendant-Appellant-Petitioner.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   REBECCA GRASSL BRADLEY, J.   We review whether Jack Suriano's actions, which caused three attorneys appointed by the State Public Defender to withdraw in rapid succession, constituted forfeiture of his right to counsel, and whether the right-to-counsel warnings and procedure this court recommended in State v. Cummings, 199 Wis. 2d 721, 546 N.W.2d 406 (1996), should be made mandatory.   We conclude that Suriano forfeited his constitutional right to counsel by repeatedly refusing to cooperate with his attorneys, constantly complaining about their performance, verbally abusing them, and triggering one lawyer's fear of a physical threat.   Suriano's dilatory and manipulative

game-playing frustrated the progression of this case and interfered with the proper administration of justice. We uphold the circuit court's[1] determination that Suriano forfeited his right to counsel, and we affirm the court of appeals decision.[2] We see no reason to change the forfeiture standard this court set forth in Cummings and decline Suriano's request to modify it. Instead, we reaffirm our holding that right-to-counsel warnings in forfeiture cases and the procedures suggested by the Cummings dissent are strongly recommended, but not required. We affirm.

## I. BACKGROUND

¶2 In October 2013, Suriano obstructed the Door County Sheriff's Department and sanitation officials who came to his home with a warrant to take a soil sample from the property. Police arrested Suriano, and he was charged with obstructing an officer, contrary to Wis. Stat. § 946.41(1) (2013-14).[3] Due to Suriano's indigence, the State Public Defender ("SPD") appointed Attorney Grant Erickson as his lawyer.

¶3 Less than one month later, Erickson filed a motion to withdraw telling the circuit court he and Suriano had "differing

---

[1] The Honorable D. Todd Ehlers of Door County Circuit Court presided.

[2] State v. Suriano, No. 2015AP959-CR, unpublished slip op. (Wis. Ct. App. Mar. 15, 2016).

[3] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

opinions and objectives for the handling and resolution of this case." At the hearing on the withdrawal motion, the circuit court asked Suriano if he opposed the motion. Suriano answered: "Well, I think we need to have some testimony on that. Maybe if I could put Grant on the stand and ask him a question or two. Get some information on the record here." Suriano asked Erickson what Erickson's end goal was and how it differed from Suriano's end goal. Erickson testified that, while his goal was to resolve the case, Suriano's goals included:

- To take depositions of all the parties and explore all contractual relationships;

- To prove his innocence;

- "[T]o explore every legal or even nonlegal aspect of this case" to make things difficult and frustrate "the legal system";

- "To be an ass"; and

- "[T]o make it difficult or frustrating for the court system to proceed" because Suriano believed he was improperly charged.

After this testimony, the circuit court again asked Suriano if he opposed Erickson's motion. Suriano did not directly answer the court's question; instead, he responded: "Anybody would probably be better so --." Interpreting this answer as a "no," the circuit court granted the motion but warned Suriano that it "did not anticipat[e]" changing the February 2014 pretrial and March 2014 trial dates that remained on the calendar.

3

¶4 The SPD gave Suriano a second attorney, Linda Schaefer, who very quickly moved to withdraw, averring that "a significant conflict ha[d] developed" so she could "no longer effectively represent Mr. Suriano." At the February 2014 pretrial hearing, the circuit court addressed Schaefer's motion and asked Suriano if he wanted to comment on it. Suriano said "No," and the circuit court granted the motion. This second withdrawal clearly bothered the circuit court, prompting a warning for Suriano:

> [T]he other thing I would suggest, Mr. Suriano, you do is call the public defender's office. You will now be on your third attorney appointed with the public defender's office. I think they have a three strike rule. Talk to them about that. . . . [W]hen individuals go through three attorneys, they don't appoint an attorney any longer so maybe you need to call them and talk to them about that also, sir, because, as I said, you are now going to be on your third attorney with the public defender's office.

When discussing the existing trial date, Suriano asked the circuit court to send communications directly to him "rather than sending it to someone who won't share it with me," but the court explained that "all correspondence and communication from the Court goes through your attorney, not to you directly."

¶5 The SPD appointed Raj Kumar Singh as Suriano's third attorney. At an April 2014 status conference, Singh told the circuit court:

- Suriano insisted Singh remind the court Suriano refused to enter his own plea at his initial appearance and instead stood "mute";

4

- Suriano wanted the case dismissed;

- Great "discord" already existed between Suriano and Singh on "the law that relates to this case"; and

- Suriano was completely dissatisfied with Singh's "performance so far as his lawyer," causing Singh to think Suriano "really wants to represent himself."

Then, Singh asked the circuit court to question "Suriano directly about whether or not he wants me to continue as his lawyer." Singh requested the circuit court's help to make sure Suriano understood:

> That if he wants anybody, whoever it is, let's say it's me to represent him as an attorney, then he's reserving three things for himself: How to plead; whether or not to waive his right to a jury. Now then there is more to that than that, but that's his part. And whether or not to testify in his own defense or remain silent. He needs to understand, other than those three things, all of the other decisions are left to the attorney, if you agree. And with that understanding, does he want to have an attorney representing him and, specifically does he want me because I have reason to doubt that he does want me and I have reason to doubt that he wants an actual attorney in general.

¶6 The circuit court then asked Singh about the SPD's "three-strike" rule——that is, whether the SPD would appoint another attorney when a defendant has already had three SPD-appointed attorneys who withdrew.[4] Singh responded he could not

---

[4] The Wisconsin State Public Defender, appearing as amicus, said the SPD does not practice a "three-strike" rule. SPD amicus counsel explained that indigent defendants do not have a constitutional right to a successor counsel, but Wisconsin rules do allow one substitute appointment regardless of the reason when it "is the only such request made by the person" and the

(continued)

5

speak for the SPD, but he had "grave doubts" about whether the SPD would appoint a fourth attorney if Suriano fired Singh. Singh said everyone should "assume that if I end up off the case he's going to have to either represent himself [or] get a lawyer on the economy." The court then specifically asked Suriano if he wanted Singh to continue as his lawyer. Suriano did not directly answer the court's question; instead, he rattled off a series of complaints about Singh, claimed he had not "received any value" from the SPD, and contended that, although his case should be "very easy to win on dismissal," none of his lawyers would pursue it.

¶7 Suriano proceeded to ask the circuit court how he could get a court-appointed attorney. The court explained how the fees and billing work with a court-appointed attorney, but told Suriano it would not appoint an attorney if Suriano was eligible for a SPD appointment. The circuit court again warned Suriano that, if he dismissed three SPD-appointed lawyers, the SPD would not give him another one.

---

"change in counsel will not delay the disposition of the case or otherwise be contrary to the interests of justice." See Wis. Admin. Code § PD 2.04(1)(May 2010). SPD will continue to try to appoint counsel beyond the scope of the rule, but it faces challenges when making fourth, fifth, and sixth appointments for defendants. The record here nonetheless reflects that the SPD refused to appoint Suriano a fourth attorney, and the denial letter did not give a reason for the decision. At oral argument, SPD amicus counsel suggested that the denial was linked to the circuit court's forfeiture finding, but nothing in the record confirms that inference.

6

¶8 Suriano asked whether the circuit court would appoint counsel if he ended up "getting dumped by the public defender's office." The court cautioned: "I will take up your petition when it's filed. I'm not saying I will grant it or I won't grant it. I'm just telling you that's the procedure and that's how the case gets billed." Then the court again asked Suriano if he wanted "to get rid" of Singh as his attorney. Suriano again refused to answer the question directly with a yes or no. Instead, he: (1) criticized Singh's representation as not benefitting him; (2) said he "hesitate[ed] to go around firing people, especially because there might be consequences"; and (3) suggested Singh withdraw because that might make Suriano look better to the SPD. Attorney Singh explained he was not filing a motion to withdraw but wanted to make a record on the issues that arose since his appointment:

- He was unable to speak to Suriano by phone, as Suriano claimed he did not have a phone;

- Suriano refused to meet in person with him on several occasions;

- He had sent many letters to Suriano and received many emails from Suriano, although he told Suriano it is not his practice to confer with clients by email;

- Suriano finally accepted that the law does not allow for depositions in his case, but Suriano made Singh prove this by showing him a copy of the statute instead of taking his lawyer's word;

7

- Singh saw no merit in the motion to suppress Suriano wanted to file; and

- Suriano did not want a trial and wanted the charge dismissed.

¶9    After a brief back and forth with the circuit court in which Suriano insisted that it was his attorney who wished to withdraw, the court stopped the exchange:  "I'm done going around in circles here this afternoon.  We're moving forward with this case.  It's now going on seven months old.  It needs to be scheduled and resolved one way or another."  Singh then told the court Suriano forbade him from filing a motion to withdraw without Suriano's preapproval, Suriano wanted to make all the lawyering decisions, and Suriano just wanted Singh "to be his clerk typist."  Singh urged the court to insist Suriano "make a decision right now does he want to represent himself or does he want [Singh] to represent him."  When the court asked him once again, Suriano talked around the issue and suggested the court schedule another hearing rather than the trial.  The court then allowed Singh to try to get a direct answer from Suriano by asking, "Mr. Suriano, would you like me to go forward as your attorney on this case knowing what I have informed you over the past weeks of our relationship?  Yes or no, please."  Suriano refused to answer yes or no, responding, "I haven't considered all of that."  The court ruled Suriano's refusal to answer meant Singh would remain as his lawyer.  The court scheduled the jury trial for June 2014.

¶10 One month later, Singh filed a motion to withdraw, titled, "Defendant's Motion for an Order of Attorney's Withdrawal." He explained to the circuit court that Suriano emailed the SPD Director of Appointments and accused Singh of being a liar and refusing to communicate, investigate, seek discovery, or prosecute a motion to suppress. Suriano's email included disparaging remarks and accusations against Singh, ending with: "I have not received legitimate representation. I need a real attorney." In an email directly to Singh, Suriano leveled a similar attack. Singh told the court:

> He will not cooperate with me at all. He wants to micromanage what I do. He wants to basically have me be, figuratively speaking, the fingers on his hand, and I've tried to explain to him that's simply not acceptable. It's not acceptable to anybody within the practice of law. I can't do that. I have to be like a medical doctor. I have to take full responsibility for what I do. I have repeatedly explained to Mr. Suriano that he has -- if he wishes to be represented, if that's the case, then he has three decisions and only three that are kept within his purview: How to plead, whether or not to testify in his own defense, and whether or not to try to [or] waive jury. Other than that, he is allowing the attorney to make all other decisions and he has absolutely expressed to me his -- his rejection of that.[5]

---

[5] SPD asks that we remind circuit courts that attorney withdrawal motions should not be granted simply based on disagreement about legal strategy; instead, circuit courts should advise defendants which legal choices belong to the defendant and which ones counsel controls. Although we agree this procedure may be beneficial, we recognize that circumstances in some cases might prevent a circuit court from doing so. We do encourage circuit courts, where circumstances allow, to instruct SPD-appointed lawyers and their clients about the choices for which each is responsible and that disagreement

(continued)

9

¶11 When the circuit court asked Suriano if he "opposed [Singh's] . . . request to be allowed to withdraw," Suriano again refused to answer yes or no, saying only: "I'm opposed to the technicalities." Bothered that Singh labeled the motion "[d]efendant's motion for order to withdraw as if I'm firing him," Suriano told the court that if Singh "put up a clean motion to withdraw, I won't object." In other words, Suriano wanted Singh to withdraw rather than making it look like Suriano fired him. Suriano then launched into a complaint about Singh that covers three transcript pages. He did not deny sending the attacking emails; indeed, he told the court he would say it all over again because "[i]t's all true." Singh advised the court: "[T]he hostility and anger that this man has shown to me is such that I will not meet with him at any location that does not have screening with a metal detector. I will not do it."

¶12 After Suriano continued complaining about Singh's representation, the prosecutor added: "I believe an ample basis both because of the number of attorneys and the reasons on the

---

on legal strategy alone may be insufficient for withdrawal. Specifically, defendants retain "the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." See Jones v. Barnes, 463 U.S. 745, 751 (1983). All other tactical decisions, "including the objections to make, the witnesses to call, and the arguments to advance" are "of practical necessity" controlled by counsel because "[t]he adversary process could not function effectively if every tactical decision required client approval." See Gonzales v. United States, 553 U.S. 242, 249 (2008)(quoting Taylor v. Illinois, 484 U.S. 400, 418 (1988)).

record given by two out of the four[6] attorneys that have represented Mr. Suriano representing Mr. Suriano's behavior that if you grant the motion to withdraw I think you should also find the defendant has forfeited his right to public representation and that he either goes alone or goes out and hires his own lawyer."

¶13 Finding the relationship irretrievably broken, the circuit court granted Singh's motion to withdraw. The circuit court then gave Suriano an opportunity to be heard on the State's request that the court find forfeiture. Suriano argued he wanted an attorney to represent him and a forfeiture finding would "be a real prejudice." He talked about how each of his SPD-appointed lawyers had failed him and how he wanted his motion to suppress reinstated. The circuit court engaged Suriano in a colloquy about his education and learned Suriano had two college degrees——geology and chemistry——and was one credit short of a graduate degree.

¶14 Determining Suriano forfeited his right to counsel, the circuit court advised him:

> [I]f you want to go out and hire an attorney or you
> want to contact the state public defender's office and
> see if they will appoint another attorney for you,
> that is absolutely your right, sir. When I'm saying

---

[6] This opinion makes an occasional reference to a fourth SPD-appointed lawyer who attended Suriano's first court appearance. This attorney's involvement was limited and occurred even before the SPD made an official appointment; thus, our analysis focuses on the three attorneys who were officially appointed and who formally withdrew from representing Suriano.

11

you forfeited your right to have an attorney, that doesn't mean you can't get an attorney, but I'm finding your actions have made it clear that you will not cooperate with any attorney.

The court went on to say it had not in "32 years of experience" ever heard an attorney refer to a client on the record "as an ass."

¶15 The circuit court found Suriano "clearly" had a problem getting along "with any attorney." It warned him that the June 2014 trial was "not coming off the calendar" and he would be representing himself if he did not "get a new attorney" before the trial. In no uncertain terms, the court warned Suriano it was done playing his game: "Yes. It's a game, Mr. Suriano, and I'm done playing it. This case is moving forward. It's going to be tried on June 4th." Suriano said he wanted to pursue a court-appointed attorney if the SPD would not give him another one. The circuit court told him he could get a form from the court clerk to petition for an appointment, but the court would "take up" his petition "when and if it is filed" and only if the SPD said he was ineligible for another appointment.

¶16 The SPD denied Suriano's request for a fourth attorney, and Suriano looked for an attorney willing to take his case under a court appointment. At a hearing in late May 2014, days before the trial date, Suriano asked the circuit court to appoint Eric Wimberger, even though Wimberger was not available for the June 4th trial date. The circuit court refused the request, explaining that it made it "very clear" it was "not moving the trial date." After the circuit court denied

12

Suriano's suppression motion, it reminded him the jury trial would occur June 4th and he should "be ready to proceed." When Suriano asked the court if it would still appoint a lawyer for him if he could find someone to make the trial date, the court answered:

> No. You have to hire an attorney. I've already found you have forfeited your right to have an attorney. If you hire an attorney yourself, you can do so, but I am not appointing one on your behalf.
>
> []Because by your own actions you've now lost the right to have a public defender which would be at no expense to you, and I've already made a clear record regarding that. So no. If you find somebody else that's available to take this on June 4th and you file another petition for Court-appointed counsel, I'm denying your request for Court-appointed counsel. You've forfeited your right to have an attorney through those means.

(Emphasis added.)

¶17 A week later, two days before trial, Suriano again asked the circuit court to appoint counsel. The circuit court explained its basis for again denying the request:

- The circuit court made it "very clear" when Suriano was still represented by SPD-appointed lawyers that Suriano was "starting to get dangerously close to a situation where [he was] not going to be eligible any longer for public defender representation."

- That's exactly what happened.

- Although the court did not blame Suriano entirely, it found he was "an active participant in why those

13

situations [with his three SPD-appointed lawyers] went haywire."

- As a result, Suriano did not qualify for an SPD-appointed attorney and he did not qualify for court-appointed counsel.

Although the circuit court told Suriano his actions caused him to forfeit his right to <u>appointed</u> counsel, it indicated Suriano could still hire a private, paid attorney, so long as the attorney would be ready for the June 4th trial.

¶18 Suriano then re-argued the suppression motion that had been denied a week earlier until the circuit court stopped him for repeating the same points over and over. Suriano then asked the court if he could call more witnesses to testify on the suppression motion. The court refused the request, but Suriano persisted, saying he had "completely new evidence." The court responded, "No. No.", and told Suriano, "We're not going to continue to go round and round regarding this."

¶19 Suriano represented himself at the one-day trial, and the jury found him guilty of obstruction. The circuit court sentenced him to a $100 fine, plus costs, and 10 days in jail, which would be "permanently stay[ed]" if Suriano paid the fine within 60 days. Suriano appealed with the help of a newly-appointed SPD-appellate lawyer, and his sentence has been stayed pending appeal. The court of appeals affirmed the judgment, and we granted Suriano's petition for review.

14

## II. STANDARD OF REVIEW

¶20 Whether Suriano forfeited his constitutional right to counsel is a question of constitutional fact, which presents a "mixed question of law and fact." See State v. Martwick, 2000 WI 5, ¶¶16-17, 231 Wis. 2d 801, 604 N.W.2d 552. We review historical and evidentiary facts under a clearly erroneous standard, but the ultimate determination as to whether a constitutional right was violated is a question of law we review independently. Id.

## III. ANALYSIS

### A. Legal Principles

¶21 Suriano is guaranteed the right to counsel by the Sixth Amendment to the United States Constitution, see Gideon v. Wainwright, 372 U.S. 335, 339-40, 345 (1963), and Article I, Section 7 of the Wisconsin Constitution, see Cummings, 199 Wis. 2d at 748. "The scope, extent, and, thus, interpretation of the right to the assistance of counsel is identical under the Wisconsin Constitution and the United States Constitution." State v. Klessig, 211 Wis. 2d 194, 202-03, 564 N.W.2d 716 (1997). Indigent defendants who cannot afford to pay for an attorney, however, do not have a right to an attorney of their own choice or the right to successive appointments. See United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006). A defendant who acts in a voluntary and deliberate way that frustrates "the orderly and efficient progression of the case" forfeits his right to counsel. Cummings, 199 Wis. 2d at 752, 753 n.15. "[T]he Sixth Amendment does not bestow upon a defendant absolute

15

rights and . . . a defendant can forfeit Sixth Amendment rights through his or her own disruptive and defiant behavior." Id. at 757 (citing Illinois v. Allen, 397 U.S. 337, 342-43 (1970)) (upholding forfeiture of right to be present at trial where defendant's behavior interfered with process of justice).

B. State v. Cummings' Waiver-Forfeiture Framework

¶22 In 1996, this court declared the standard to use in forfeiture of trial counsel cases. See Cummings, 199 Wis. 2d at 751-52. Addressing forfeiture, this court acknowledged two situations where a defendant loses his right to counsel: (1) a defendant may knowingly, intelligently, and voluntarily waive his right to counsel; and (2) a defendant may forfeit his right to counsel. Cummings, 199 Wis. 2d at 752.

¶23 In a waiver situation, the circuit court must hold a hearing and engage in a colloquy with the defendant to ensure the defendant: "(1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him." Klessig, 211 Wis. 2d at 206. The circuit court must also determine whether a defendant is competent to represent himself. Id. at 212.

¶24 Forfeiture requires very different procedures covering a variety of scenarios where a defendant's conduct results in the involuntary loss of counsel by operation of law. See Cummings, 199 Wis. 2d at 752-58. "[T]he triggering event for

16

forfeiture is when the 'court becomes convinced that the orderly and efficient progression of the case [is] being frustrated.'" Id. at 753 n.15 (quoted source and ellipsis omitted). Scenarios triggering forfeiture include: (1) a defendant's manipulative and disruptive behavior; (2) withdrawal of multiple attorneys based on a defendant's consistent refusal to cooperate with any of them and constant complaints about the attorneys' performance; (3) a defendant whose attitude is defiant and whose choices repeatedly result in delay, interfering with the process of justice, see id. at 752-57, and (4) physical or verbal abuse directed at counsel or the court. See United States v. Leggett, 162 F.3d 237, 251 (3d Cir. 1998) (defendant's physical attack on counsel constituted forfeiture); United States v. McLeod, 53 F.3d 322, 325 (11th Cir. 1995) (verbal abuse and threats to sue counsel constituted forfeiture). When those situations arise, a defendant loses his right to counsel by "operation of law"——not by express verbal consent but because the defendant's voluntary and deliberate actions told the circuit court he would make it "impossible" for any attorney to be able to represent him. Cummings, 199 Wis. 2d at 753-54.

¶25 Although the United States Supreme Court has not yet spoken on the issue presented here, numerous state and federal courts have addressed issues involving waiver or forfeiture of the right to counsel. See, e.g., Tennessee v. Carruthers, 35 S.W.3d 516, 546-49 & n.26 (Tenn. 2000) (collecting cases). Some of those courts follow the same approach as this court in Cummings, limiting discussion to waiver or forfeiture. See,

17

e.g., Gilchrist v. O'Keefe, 260 F.3d 87, 95 (2d Cir. 2001) (upholding forfeiture of counsel; concluding the United States Supreme Court allows both waiver and forfeiture of constitutional rights); Leggett, 162 F.3d at 251.

¶26 Other courts have added a third category called "waiver by conduct" to cover the "hybrid situation" between forfeiture and express waiver. See, e.g., United States v. Goldberg, 67 F.3d 1092, 1099-1103 (3d Cir. 1995); see also Maine v. Nisbet, 2016 ME 36, ¶¶24-36, 134 A.3d 840, 851-53 (adopting Goldberg approach). The Third Circuit in United States v. Goldberg determined loss-of-counsel cases fall into three categories:

(1) Express Waiver. This involves the typical situation where a defendant wants to exercise the right to self-representation. It requires a knowing, intelligent and voluntary waiver of the right to counsel, including a colloquy with the defendant, warnings to the defendant of the risks associated with self-representation, and a determination that the defendant is competent to represent himself. Id. at 1099-1100.

(2) Forfeiture. This covers circumstances where a defendant's behavior, such as abusing or threatening counsel or demanding that counsel "engage in unethical conduct," results in loss of counsel without warnings, "regardless of the defendant's knowledge" that he is losing the right to counsel and "irrespective of

18

whether the defendant intended to relinquish the right." Id. at 1100.

(3) Waiver by conduct. This covers a "hybrid situation" between forfeiture and express waiver. It arises where the defendant engages in dilatory behavior but does not expressly waive his right to counsel. In these situations, the Goldberg court held defendants must be warned that they will lose the right to counsel unless their dilatory behavior stops, and the warning must include the risks of proceeding pro se. If the defendant's bad behavior continues, it "may be treated as an implied request to proceed pro se, and thus, as a waiver of the right to counsel." Id. at 1100-1101.

The Goldberg court discussed concerns about recognizing the differences between forfeiture and waiver by conduct because these two categories overlap. Id. at 1101-1102.

¶27 Suriano urges this court to adopt the three-tiered approach used in Goldberg. We decline this request. Since 1995, when Goldberg was decided, many state supreme courts have adopted the three-tiered approach. See, e.g., Bultron v. State, 897 A.2d 758, 763-65 (Del. 2006); Nisbet, 134 A.3d 840, ¶¶24-36; State v. Jones, 772 N.W.2d 496, 504 (Minn. 2009). Those courts, however, had not previously decided to review forfeiture situations under a two-tiered "express waiver—forfeiture" framework like this court did in Cummings. This court, moreover, chose the two-tiered framework even though Goldberg

19

introduced its three-tiered approach to loss-of-counsel cases the year before we decided Cummings. This court could have adopted the three-tiered Goldberg approach but it did not do so. Rather, this court addressed loss-of-counsel issues as either forfeiture or express waiver. See Cummings, 199 Wis. 2d at 752-58.

¶28 We acknowledge the substantial body of case law on this issue since our decision in Cummings, but we remain unconvinced that a switch to Goldberg's three-tiered approach is warranted. The United States Court of Appeals for the Second Circuit in Gilchrist v. O'Keefe, authored by then-Judge Sonia Sotomayor, analyzed the issue under the traditional two-tiered approach, and although the decision referred to Goldberg, see Gilchrist 260 F.3d at 98-99, it made no reference to the three-tiered approach or the hybrid category of waiver by conduct. Gilchrist held:

> Having thus established that Supreme Court precedent recognizes a distinction between waiver and forfeiture of constitutional rights, and that there is no Supreme Court holding either that an indigent defendant may not forfeit (as opposed to waive) his right to counsel through misconduct nor a general Supreme Court holding that a defendant may not forfeit a constitutional right, we conclude that the state court rulings [that the defendant forfeited his right to counsel] were not 'contrary to' clearly established federal law as determined by the Supreme Court.

Id. 260 F.3d at 97. The Second Circuit's analysis convinces us we got it right in Cummings.

¶29 Significant to our conclusion is the absence of any United States Supreme Court case addressing this issue. The

20

approach this court adopted in 1996 has not been rejected by the Supreme Court and is sound in principle. Wisconsin courts have followed this approach for over twenty years; it has provided a workable test and clear guidance for circuit courts, lawyers, and litigants; and we have not been presented with any justification to abandon that existing law. See Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶¶94-100, 264 Wis. 2d 60, 665 N.W.2d 257 (discussing the principles of stare decisis). "It is not a sufficient reason for this court to overrule its precedent that a large majority of other jurisdictions, with no binding authority on this court, have reached opposing conclusions." Id., ¶100. The Cummings approach using only forfeiture and express waiver protects a defendant's right to be represented by counsel and the right to choose self-representation, but it also facilitates the circuit courts' duty to administer justice in an orderly, timely, and dignified manner. We reaffirm our holding in Cummings utilizing the two-tiered, loss-of-counsel analysis.

### C. Applying the Cummings Test to Suriano

¶30 Applying Cummings here, we conclude Suriano forfeited his right to counsel. Suriano's case falls into the forfeiture category because there is no dispute he did not expressly waive his right to counsel. A defendant forfeits his or her right to counsel "when the 'court becomes convinced that the orderly and efficient progression of the case [is] being frustrated,'" Cummings, 199 Wis. 2d at 753 n.15 (quoted source and ellipsis

21

omitted), by the defendant's voluntary and deliberate choices, id. at 752.

¶31 The record supports the circuit court's finding that Suriano made it clear he would not cooperate with any attorney. His actions caused three SPD lawyers to withdraw in rapid succession. One of those lawyers specifically testified that Suriano was trying to frustrate the progress of the case and cause delay because Suriano believed the case should be dismissed. Another one of his lawyers felt so threatened by Suriano that he would not meet with him unless he could be sure Suriano did not have a weapon. Suriano verbally abused at least one of his lawyers, admitted in open court that he did so, and declared he would do it again because the disparaging verbal assaults were all "true." The circuit court found Suriano was playing games and manipulating the case to delay the trial. Suriano did not say he wanted to represent himself, but his repeated dilatory tactics and abusive behavior expressed loudly and clearly that he would make it impossible for any attorney to represent him. This is sufficient to satisfy the forfeiture standard and supports the circuit court's finding of forfeiture in this case. Suriano's voluntary and deliberate choices frustrated the orderly and efficient progression of this case.[7]

¶32 We also reject Suriano's contention that a defendant cannot forfeit the right to counsel unless the defendant's

---

[7] There is no argument that the choices Suriano made were involuntary or not deliberate.

22

actions were done with an intent or purpose to delay. Tying the frustration of the orderly and efficient progression to a defendant's motivation or purpose for engaging in dilatory tactics would not provide a workable standard, as circuit courts cannot read the minds of the defendants who appear before them. Defendants choosing dilatory tactics do not often disclose the true purpose behind such conduct. Circuit courts can, however, observe a defendant's voluntary and deliberately dilatory actions and determine that those actions resulted in a delay and reached the level of frustrating the orderly and efficient progression of the case. Moreover, a defendant who subjects counsel to physical or verbal abuse or refuses to cooperate with a succession of appointed attorneys may not be acting with intent to delay proceedings; nevertheless, such behavior frustrates the orderly and efficient progression of the case, and it is this resulting obstruction of the proper administration of justice that triggers forfeiture, regardless of whether delay was the defendant's objective. Accordingly, we overrule the contrary language in State v. Coleman, 2002 WI App 100, ¶18, 253 Wis. 2d 693, 644 N.W.2d 283, and any other case requiring proof of intentional, purposeful delay.[8]

---

[8] State v. Coleman, 2002 WI App 100, ¶18, 253 Wis. 2d 693, 644 N.W.2d 283, held: "[F]orfeiture cannot occur simply because the effect of the defendant's conduct is to frustrate the orderly and efficient progression of the case. The defendant must also have the purpose of causing that effect." We overrule the language requiring proof of the defendant's purpose or motivation. The standard set forth in State v. Cummings and reaffirmed here is that forfeiture occurs when the circuit court

(continued)

23

D. Right-to-Counsel Warnings and Procedure in Forfeiture Cases

¶33 Suriano also requests that this court make mandatory the right-to-counsel warnings and procedure recommended in Cummings. We reject this request. In Cummings, the dissent advocated for mandatory right-to-counsel warnings plus specific procedural steps in all forfeiture cases. See Cummings, 199 Wis. 2d at 764 (Geske, J., dissenting).[9] The Cummings majority

becomes convinced that the defendant's voluntary and deliberate conduct frustrated the orderly and efficient progression of the case. See State v. Cummings, 199 Wis. 2d 721, 753 n.15, 546 N.W.2d 406 (1996).

Our opinion does not foreclose a circuit court from using a defendant's specific intent or purpose "to frustrate the orderly and efficient progression of the case" in its analysis, as the circuit court implicitly did in this case. Proof of the defendant's actual motivation underlying his or her behavior, however, is not required to meet the forfeiture standard. The Cummings' standard is satisfied when the 'court becomes convinced that the orderly and efficient progression of the case [is] being frustrated,'" Cummings, 199 Wis. 2d at 753 n.15 (quoted source and ellipsis omitted), by the defendant's voluntary and deliberate choices. The effect of the defendant's voluntary and deliberate actions, even absent any express intent to delay, controls.

[9] The Cummings dissent advocated for the following warnings and procedure in all forfeiture cases:

(1) [E]xplicit warnings that, if the defendant persists in "X" [specific conduct], the court will find that the right to counsel has been forfeited and will require the defendant to proceed to trial pro se; (2) a colloquy indicating that the defendant has been made aware of the difficulties and dangers inherent in self-representation; (3) a clear ruling when the court deems the right to counsel to have been forfeited; (4) factual findings to support the court's ruling; and (5) appointment of standby counsel.

(continued)

24

opinion recommended these warnings and procedures but did not require them. Id. at 756 n.18. We reaffirm our holding on right-to-counsel warnings and procedure in forfeiture cases. Forfeiture cases, by their very definition, involve a manipulative, disruptive, and potentially violent or abusive defendant. Although we continue to recommend that circuit courts give these warnings and follow these procedures whenever the circumstances allow, we recognize the challenges our circuit courts face on a daily basis may not always permit strict compliance. In forfeiture cases, loss of the right to counsel occurs by operation of law without the need to ensure a defendant knows he is losing his right and regardless of whether he intends to do so. See Cummings, 199 Wis. 2d at 752; Leggett, 162 F.3d at 250; State v. Lehman, 749 N.W.2d 76, 82 (Minn. Ct. App. 2008).[10] This is precisely why no warnings are required.

## IV.  CONCLUSION

¶34 We reaffirm our decision in Cummings applying a two-tiered forfeiture—express waiver framework. We continue to apply the Cummings standard governing forfeiture of counsel

---

Cummings, 199 Wis. 2d at 764 (Geske, J., dissenting).

[10] Although Suriano did not receive the full panoply of warnings and procedures specifically recommended in Cummings, forfeiture did not come without any warning at all. The circuit court repeatedly warned Suriano that he would not be provided with an endless supply of SPD lawyers. Suriano heard at the April 2014 hearing that if Singh withdrew, the SPD would not appoint a fourth attorney, and the circuit court forcefully warned Suriano that the June 2014 trial date would not be adjourned.

25

cases, and we emphasize that the warnings and procedures it suggests remain recommendations only. Applying the Cummings standard to this case, we hold that Suriano forfeited his constitutional right to counsel by engaging in voluntary and deliberate conduct, which frustrated the progression of his case and interfered with the proper administration of justice. The record supports the circuit court's findings that Suriano repeatedly refused to cooperate with his attorneys, engaged in recurrent dilatory tactics to manipulate and cause delay, and verbally abused counsel, even causing one of his lawyers to view Suriano as a physical threat. The circuit court's finding of forfeiture meets the Cummings standard and we agree with the court of appeals' decision affirming it.

*By the Court.*—The decision of the court of appeals is affirmed.

¶35 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* "The right to the assistance of counsel is necessary to ensure that a criminal defendant receives a fair trial, that all defendants stand equal before the law, and ultimately that justice is served."[1]

¶36 The instant case addresses the assertion that the circuit court denied Suriano's Sixth Amendment right to counsel.[2]

¶37 To protect an accused's right to counsel, to avoid after-the-fact legal disputes regarding whether an accused relinquished (that is, forfeited or waived)[3] the right to counsel, and to promote certainty and judicial efficiency, I would mandate an in-court, on-the-record colloquy by the circuit court with the accused in all cases pertaining to relinquishment of the fundamental right to counsel. The colloquy is set forth in Justice Geske's dissent in State v. Cummings, 199 Wis. 2d 721, 546 N.W.2d 406 (1996).[4]

---

[1] State v. Klessig, 211 Wis. 2d 194, 201, 564 N.W.2d 716 (1997).

[2] An accused also has the right to self-representation. Klessig, 211 Wis. 2d at 202.

[3] The presumption is that the right to counsel is not waived. "It has been pointed out that courts indulge every reasonable presumption against waiver of fundamental constitutional right and that we do not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (internal quotation marks omitted).

[4] For an in-court procedure similar to that proposed by Justice Geske, see Wis JI——Criminal SM 30.

1

¶38 The majority opinion "strongly recommends" this procedure. See majority op., ¶¶1, 34. I would require it.

¶39 I would require the circuit court record to reflect that the circuit court made the accused aware of the seriousness of the charges he or she faces, the potential penalties that may be imposed upon a finding of guilt, and the difficulties and disadvantages of self-representation. Cummings, 199 Wis. 2d at 763 (Geske, J., dissenting).

¶40 In Cummings, Justice Geske sets forth the colloquy in which the circuit court shall:

(1) [Provide] explicit warnings that, if the defendant persists in [specific conduct], the court will find that the right to counsel has been forfeited . . . . ;

(2) [Engage in] a colloquy indicating that the defendant has been made aware of the difficulties and dangers inherent in self-representation;

(3) [Make] a clear ruling when the court deems the right to counsel to have been forfeited; [and]

(4) [Make] factual findings to support the court's ruling . . . .

Cummings, 199 Wis. 2d at 764 (Geske, J., dissenting).[5]

¶41 This procedure puts an accused on notice that his or her conduct will lead to a relinquishment of the right to

---

[5] As a fifth point, Justice Geske addressed the appointment of standby counsel if the defendant forfeits his or her right to counsel. "Standby counsel serves not only to safeguard a defendant's constitutionally protected rights but also to advance the court's objectives of judicial efficiency by assisting the accused in overcoming routine procedural and evidentiary obstacles." State v. Cummings, 199 Wis. 2d 721, 764-65, 546 N.W.2d 406 (1996) (Geske, J., dissenting).

counsel, ensures an accused's right to a fair trial, and discharges the circuit court's "special obligation[] of judicial responsibility that [it] faces when dealing with an unrepresented [criminal] defendant."[6]

¶42 Although forfeiture of the right to counsel, constructive waiver of the right to counsel, and voluntary waiver of the right to counsel are different doctrines of law, the application of these doctrines may blend and overlap in certain circumstances. There does not seem to be any reason (except perhaps in an emergency situation not presented in the instant case) why the same procedural safeguards should not be imposed in all cases involving the relinquishment of the right to counsel.

¶43 I joined Justice Geske's dissent in Cummings, and I am even more persuaded by it now than then.

¶44 When this court decided Cummings, the case law did not require a colloquy in which a circuit court explored with the accused whether the accused was voluntarily waiving, as opposed to constructively waiving or forfeiting, the right to counsel.

---

[6] Cummings, 199 Wis. 2d at 762, (Geske, J., dissenting); see also Johnson v. Zerbst, 304 U.S. 458, 465 (1938):

The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused——whose life or liberty is at stake——is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.

3

See State v. Pickens, 96 Wis. 2d 549, 601, 292 N.W.2d 601 (1980).

¶45 Pickens has been "overruled" since Cummings to the extent that "we mandate the use of a colloquy in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel." State v. Klessig, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997).

¶46 The Klessig court explained that the circuit court's conducting an examination of the accused "is the clearest and most efficient means of insuring" that the waiver of the right to counsel was valid, and preserves and documents the accused's waiver for purposes of review. Klessig, 211 Wis. 2d at 206. "Thus," wrote the court in Klessig, "a properly conducted colloquy serves the dual purposes of ensuring that a defendant is not deprived of his constitutional rights and of efficiently guarding our scarce judicial resources." Klessig, 211 Wis. 2d at 206.

¶47 The colloquy required by Klessig is substantially similar to that set forth in the Cummings dissent. The circuit courts are therefore familiar with and already use the colloquy in voluntary waiver of counsel cases. Requiring the colloquy in all cases involving the relinquishment of counsel is not too much of a burden on the circuit courts and might even be viewed as a simplification of process.

¶48 On the basis of the record in the instant case I cannot conclude that Suriano validly relinquished his Sixth Amendment right to counsel.

4

¶49 Accordingly, I dissent.

¶50 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.