COURT OF APPEALS
DECISION
DATED AND FILED

September 21, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2020AP856-CR**
**2020AP857-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2017CF5023
2018CF1532

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RODNEY LEWIS BOWMAN, SR.,

DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Milwaukee County: CYNTHIA MAE DAVIS, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Rodney Lewis Bowman, Sr., appeals from the judgments of conviction for charges of child abuse, strangulation, and witness intimidation, all arising out of his actions toward his sixteen-year-old daughter. He also appeals the trial court orders denying his motion for postconviction relief without a hearing. Bowman argues that the trial court erroneously admitted his daughter's statements under the doctrine of forfeiture by wrongdoing. Further, he contends that trial counsel was ineffective due to an actual conflict of interest over attempting to contact his daughter. We reject Bowman's arguments, and accordingly, we affirm.

## BACKGROUND

¶2 This case began in October 2017 when Milwaukee police were called to Children's Hospital to investigate a complaint that Bowman physically abused his then sixteen-year-old daughter, M.B. In the criminal complaint, Bowman was charged with one count of physical abuse of a child—intentional causation of bodily harm and one count of strangulation and suffocation, both counts with the habitual criminality repeater penalty enhancers. The court granted the State's motion to adjourn the scheduled March 2018 trial to investigate witness intimidation charges against Bowman based on his jail calls. The State then charged Bowman in a separate case with two counts of felony intimidation of a witness by a person charged with a felony with the habitual criminality repeater penalty enhancers.

¶3 On the next scheduled trial date, May 4, 2018, the State moved to adjourn the trial because M.B. did not appear.[1] The State filed a memorandum of law on forfeiture by wrongdoing to move the case forward without M.B.'s testimony.

¶4 Two days before the rescheduled June 2018 trial date, Bowman's trial counsel moved to withdraw from representing Bowman citing a conflict of interest. After receiving assurances that Bowman wanted trial counsel to represent him and would respect trial counsel's direction of the case, the court denied the motion.

¶5 The case was tried to the court on June 28 and 29, 2018 and July 16, 2018. M.B. did not appear. The court held in abeyance, but ultimately granted, the State's motion to admit M.B.'s statements to third parties under the doctrine of forfeiture by wrongdoing. Prior to deciding the motion, the court heard testimony about M.B.'s statements that the State wanted to admit, the evidence that Bowman intentionally prevented M.B. from appearing, and the State's diligence in securing M.B.'s appearance.

¶6 The court first heard testimony from the nurse practitioner at Children's Hospital who treated M.B.'s injuries after the alleged child abuse. The nurse practitioner reviewed photos of M.B.'s bruises, which were visible on the physical exam of M.B., and she testified that M.B. told her that, "my dad punched me on that side of the face." She also testified that M.B. had bruising on her neck and she stated, "he choked me. My granny stopped it." Regarding an injury to

---

[1] In April 2018, the trial court granted the State's motion to join the two cases. The cases were joined at trial and are consolidated in this appeal.

3

M.B.'s forearm, the nurse practitioner testified that M.B. stated, "when he hit me, I tried to block him."

¶7     The State called the Milwaukee County District Attorney's Office investigator who reviewed Bowman's jail calls and played recordings of the calls.[2] The first call at issue occurred on January 5, 2018, when Bowman called his mother, Fannie Bowman. Bowman told Fannie that she should not accept a subpoena for M.B. to attend court. Bowman stated that "[t]his should be dismissed …. [M.B.] ain't gotta come to court." The second jail call occurred on January 7, 2018, when Bowman again called Fannie, this time speaking to both Fannie and M.B. Bowman told Fannie, "[i]f them folks come talk to [M.B.] at school, she needs to act a fool and … tell [th]em to leave her alone and naw [sic], she ain't finna [sic] come to court and all that whole mess, 'cause that's what they probably gon'[sic] try to do." Bowman told M.B. that if anyone tries to talk to her, she should tell them that she was not going to "come to court and all that." Bowman also told M.B. not to accept any envelopes from anyone.

¶8     The State called Fannie, who testified that she received and signed for subpoenas for herself and for M.B. She further confirmed that M.B. was aware of the trial date and had seen the subpoena: Fannie testified that she was the person serving as a guardian of M.B. at the time the subpoenas were served and at the trial. The court reviewed the sufficiency of the State's efforts to secure M.B.'s appearance and the legal requirements pursuant to the forfeiture by wrongdoing doctrine before it admitted M.B.'s statements under the doctrine.

---

[2] The investigator commented on Bowman's statements in the recorded calls; however, we recite the call language transcribed in the criminal complaint.

¶9 The State then called the officer who responded to the child abuse complaint at Children's Hospital. She testified that M.B. reported that she had a verbal argument with her father that turned physical, during which Bowman choked, punched, and "smashed" her on the back of the head. M.B. went to the hospital for x-rays of her arm, which was injured when she used her "arm to block the blows coming at her" from Bowman. The State called a second police officer who testified about the body camera video footage of M.B.'s visit to Children's Hospital and the police visit to Fannie's house.

¶10 On July 16, 2018, the trial court found Bowman guilty of all counts. The court imposed an eight-year sentence on Bowman, evenly bifurcated between initial confinement and extended supervision.

¶11 After his conviction and sentencing, Bowman waived his attorney/client privilege with trial counsel in writing and Bowman then described to the court the alleged conflict of interest before trial: trial counsel wanted to have an investigator contact M.B. to get her to testify at trial and see if she would recant. Bowman was afraid that trial counsel contacting M.B. would violate the "no contact" order and hurt his case. Bowman moved for postconviction relief, which was denied by the trial court without a hearing. The court further denied Bowman's motion for reconsideration. Bowman appeals.

**DISCUSSION**

¶12 Bowman argues that the trial court erroneously applied the forfeiture by wrongdoing doctrine to admit M.B.'s statements to the nurse practitioner, the

5

police, and her grandmother.[3] Additionally, Bowman argues that trial counsel was ineffective due to an actual conflict of interest.

## I.    *Forfeiture by wrongdoing*

¶13    Bowman contends that the trial court erred when it admitted M.B.'s statements about the incident under the doctrine of forfeiture by wrongdoing. Bowman contends that the State failed to meet its burden to show that it made good faith efforts and due diligence to secure M.B.'s presence and that the State failed to show that Bowman's jail calls were a substantial causative factor in M.B.'s failure to appear at trial.

¶14    We review the trial court's decision to admit evidence under the erroneous exercise of discretion standard. *State v. Baldwin*, 2010 WI App 162, ¶30, 330 Wis. 2d 500, 794 N.W.2d 769. The trial court's decision is a proper act of discretion "when the record shows it 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Id.*, ¶31 (citation omitted; one set of quotation marks omitted). We independently review the constitutional question of whether the admission of evidence violates a defendant's right to confrontation. *State v. Reinwand*, 2019 WI 25, ¶17, 385 Wis. 2d 700, 924 N.W.2d 184. We accept the trial court's findings of fact unless they are clearly erroneous. *Baldwin*, 330 Wis. 2d 500, ¶30.

---

[3] The State argues that Bowman fails to specify which statements to Fannie were erroneously admitted or how any of M.B.'s statements to Fannie could be testimonial and fall under Confrontation Clause scrutiny. Bowman does not refute the State's argument in his reply, and thus we conclude that Bowman concedes that Fannie's statements were not at issue and we do not address them in the analysis of confrontation rights. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

¶15    The Confrontation Clause of the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  U.S. CONST. amend. VI; *see also* WIS. CONST. art. I, § 7; *Reinwand*, 385 Wis. 2d 700, ¶19.  An exception from the protections of the Confrontation Clause is "forfeiture by wrongdoing, which permit[s] the introduction of statements of a [declarant] who was detained or kept away by the means or procurement of the defendant." *Baldwin*, 330 Wis. 2d 500, ¶34 (citations omitted; internal quotation marks omitted).  The forfeiture by wrongdoing exception is "applied only when the defendant engaged in conduct *designed* to prevent the witness from testifying." *Giles v. California*, 554 U.S. 353, 359 (2008).  In our analysis to determine the application of the doctrine, we consider:  (1) whether the witness is "unavailable" pursuant to WIS. STAT. § 908.04 (2019-20);[4] (2) whether the proponent of the testimony made a good-faith effort and exercised due diligence to secure the witness's presence, *see Baldwin*, 330 Wis. 2d 500, ¶48; (3) whether the defendant was the substantial cause of the witness's unavailability, *see State v. Rodriguez*, 2007 WI App 252, ¶15, 306 Wis. 2d 129, 743 N.W.2d 460; and (4) whether the defendant intended to prevent the witness from testifying, see *Giles*, 554 U.S. at 359.

¶16    Bowman disputes that the State's efforts to procure M.B.'s presence were sufficient.  He argues that serving a subpoena on Fannie did not show due diligence to reach M.B.  Bowman asserts that the State failed to (1) take additional efforts for the third trial date when M.B. did not appear at the first trial date;

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

(2) enlist law enforcement to find M.B.; (3) issue a body attachment for M.B.; and (4) send letters and direct phone calls to M.B. prior to the trial. Bowman further contends that Fannie was not M.B.'s legal guardian and serving her did not satisfy the requirements to serve a minor. None of these arguments refute that the trial court's decision to admit the statements was reasonable or establish that Bowman's confrontation rights were violated.

¶17 The record reflects that the trial court thoroughly questioned the State before admitting M.B.'s statements under the doctrine.[5] The State established that M.B. was not present in court and therefore unavailable. The State detailed its efforts to serve M.B. at her mother's house, where she went after the incident, and at Fannie's house, where M.B. normally resides and returned two weeks after the incident. The State informed the court that "the grandmother, who she lives with in the same house and is related to, she told [M.B.] that she needs to be here and what the court dates are and that she should be here." The State also noted that officers told the prosecutor that [M.B.] "was present at the charging conference, which … shows that she does take orders seriously because she was here."

¶18 The trial court questioned the State on its efforts to serve M.B. asking whether personal service for the current court date had been accomplished. The State said:

---

[5] The State wanted to admit M.B.'s statements to the nurse practitioner and the police about her father as the cause of her injuries. The State also argued that the nurse practitioner's statement would be admissible under the hearsay exception for purposes of medical diagnosis or treatment under WIS. STAT. § 908.03(4). Although the State renews this argument on appeal, we do not address it because we have concluded that the statements were admissible under the doctrine of forfeiture by wrongdoing.

> [M.B.] is not an adult, and I know the way we try to serve juveniles is getting the subpoena to the guardian, and in this instance Fannie Bowman is her grandmother with whom she resides. She was present last time when the date was set, she knows about today's date. She has been on call, and she will be here tomorrow morning. She's at work currently, but, again, that's who [M.B.] resides with and who she is in the care of.

The State said that the subpoenas for the current court date for M.B. and for Fannie were both signed by Fannie. Fannie's testimony showed that she received and signed for subpoenas for herself and for M.B. She further confirmed that M.B. was aware of the trial date and had seen the subpoena. Fannie also testified that she was the guardian of M.B. at the time the subpoenas were served and at the time of the trial.

¶19 The court concluded that the State proved it acted with due diligence to secure M.B.'s appearance through the signed subpoenas and Fannie's testimony. Because the trial court was informed that M.B. had actual knowledge of the trial date and the subpoena issued for her presence, we conclude that it was reasonable for the court to determine that the State's efforts and diligence were sufficient. Bowman's argument that the State could have done more and should have taken more action to secure M.B.'s presence does not overcome the trial court's analysis in the record.

¶20 Turning to the question of whether the defendant was a substantial cause of the witness's unavailability and intended to prevent the witness from testifying, the record reflects that the trial court heard testimony and evidence that supported its conclusion that the State satisfied these factors. First, the court heard from the Milwaukee County District Attorney's Office investigator who investigated Bowman's jail calls, which resulted in Bowman being charged in the second case. Second, the court heard the recordings of the jail calls, in which

Bowman told Fannie and M.B. not to accept any envelopes and that his case should be dismissed. Third, the court heard Fannie's testimony verifying the voices on the jail calls were her own and Bowman's. The trial court concluded that relying on the recorded jail calls and the testimony from the investigator and some of the testimony from Fannie, there was enough evidence that Bowman "intended to prevent [M.B.] from testifying[.]"

¶21 The trial court concluded that the State "met its burden by proving by a preponderance of the evidence that [] Bowman was a substantial factor in causing the unavailability of the witness[.]" The court accepted the State's argument that Bowman, as M.B.'s father, was in a "position of authority" and the court found that Bowman "directly [told] his child, the witness here, not to accept service and not to come to court." The court found that the State satisfied its burden when it showed that Bowman's two jail calls in January 2018 were intentional acts to prevent M.B. from testifying.[6] The court then granted the State's "motion to admit the statements of [M.B.] under the doctrine of forfeiture by wrongdoing."

¶22 Bowman disputes that the State satisfied its burden to show that Bowman and the jail calls were a substantial cause of M.B.'s non-appearance. Bowman offers several arguments, although none are availing: that any intimidating effect of the calls had diminished in the six months between the calls and the trial, that there would need to be repetitive calls to have an effect, that

---

[6] Additionally, the State argues that the doctrine requires proving Bowman's intent to cause M.B. to be unavailable for trial, not his success in that attempt. As the doctrine of forfeiture by wrongdoing is only raised when a witness does not appear, and as M.B. did not appear at trial, we decline to address this argument.

Fannie was not questioned about M.B.'s reactions to the calls, and that M.B. was "independent" and not obedient to her father's authority. However, Bowman fails to develop these arguments with legal authority; therefore, we decline to address them. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶23    Additionally, Bowman argues that Fannie was not M.B.'s legal guardian and submitted an affidavit from Fannie attesting that she was not M.B.'s legal guardian. Nevertheless, the State contends that Fannie's trial testimony clearly stated she was M.B.'s guardian and that M.B. lived with her. Bowman does not refute this argument and we consider it a concession that Fannie's legal relationship is not dispositive to this issue. *See **United Co-op. v. Frontier FS Co-op.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

¶24    We conclude that the trial court's decision to admit M.B.'s statements under the doctrine of forfeiture by wrongdoing was a reasonable exercise of discretion. The court considered the relevant facts of M.B.'s non-appearance, the State's efforts to secure her appearance, and Bowman's efforts to prevent her from appearing. The court considered the proper standard of law for forfeiture by wrongdoing and it demonstrated rational decision-making when it reached its conclusion. Therefore, we reject Bowman's claim that the trial court erred when it admitted M.B.'s statements under the forfeiture by wrongdoing doctrine, and we conclude that there has been no violation of Bowman's rights under the Confrontation Clause. *See **Baldwin***, 330 Wis. 2d 500, ¶31.

## II.    *Ineffective assistance of counsel*

¶25    Bowman argues that trial counsel had an actual conflict in his representation at trial; therefore, counsel's assistance was ineffective. The standard of law to show actual conflict of interest in an ineffectiveness claim is

governed by *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which holds that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" to establish a violation of his Sixth Amendment rights to counsel. *Id.* at 348.[7] The Wisconsin Supreme Court has interpreted *Cuyler* to mean "[a]n actual conflict of interest exists when the defendant's attorney was actively representing a conflicting interest, so that the attorney's performance was adversely affected. Once an actual conflict of interest has been established, the defendant need not make a showing of prejudice because prejudice is presumed." *State v. Love*, 227 Wis. 2d 60, 71, 594 N.W.2d 806 (1999). "Determining what constitutes an actual conflict of interest must be resolved by looking at the facts of the case." *Id.* Importantly, "[c]ounsel is considered *per se* ineffective once an actual conflict of interest has been shown." *Id.*

¶26 Accordingly, our analysis focuses on whether an actual conflict of interest existed between trial counsel and Bowman. We turn to the motion hearing

---

[7] The State argues that Bowman's claim fails because he has failed to show deficiency or prejudice, as required to satisfy the two-prong test pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). Our review of the case law shows that Bowman's allegation of an actual conflict of interest over calling witnesses is appropriately reviewed under the standard in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). This standard has been applied to cases including where the trial counsel represented co-defendants, *State v. Kaye*, 106 Wis. 2d 1, 3, 7, 315 N.W.2d 337 (1982); previously served as a prosecutor in the defendant's case, *State v. Love*, 227 Wis. 2d 60, 66, 594 N.W.2d 806 (1999); represented both the defendant and a witness (in a case in her own right), *State v. Villarreal*, 2013 WI App 33, ¶¶4-5, 346 Wis. 2d 690, 828 N.W.2d 866; planned to write a book about the case with the defendant that created pecuniary interests precluding undivided loyalty to the defendant, *State v. Fencl*, 109 Wis. 2d 224, 231, 325 N.W.2d 703 (1982); and represented a defendant and the divorce case of a detective investigating the complaint against the defendant, *State v. Street*, 202 Wis. 2d 533, 538, 542, 551 N.W.2d 830 (Ct. App. 1996). The key difference of the *Cuyler* analysis from the *Strickland* analysis is that "the defendant need not make the full showing of prejudice usually required under *Strickland*—that it is more likely than not that the outcome of the proceeding would have been different had the attorney acted properly." *Street*, 202 Wis. 2d at 542; *see Love*, 227 Wis. 2d at 71.

two days prior to the June 2018 trial, when Bowman's trial counsel moved to withdraw from representing Bowman citing a conflict of interest affected by attorney/client confidentiality. The court questioned trial counsel:

> THE COURT: Without getting into details, is it just generally difference of strategies or he's asking you to argue certain ways that you don't believe you can or just ultimately you're not communicating with each other?
>
> [TRIAL COUNSEL]: No. I believe this falls under the category of good cause to withdraw in regards to my personal interest of how I would want to continue to practice law in the State of Wisconsin as opposed to his personal interest to pursue. In terms of communication that we received, I'm trying to avoid potential ramification and corrective actions down the line from the Office of Lawyer Regulation. I think that—I can't explain any further than that.

¶27 Bowman informed the court that he wanted trial counsel to represent him, stating, "I have no problem with [trial counsel] representing any strategies he may have in this case." Further, he stated, "I'm going to respect any way he do his job, and like he said, represent me in a competent manner." Trial counsel again told the court that without Bowman waiving confidentiality, he believed his "practicing personal interest[s] are conflicting with [Bowman's] wants or his communication to me[.]" However, Bowman again assured the court, "There is no conflict[.]" The court stated:

> [Bowman has] represented that he's going to respect your opinion as to what you can and can't do. And I'm trying to read between the lines, but if it means that you think that he might be filing a complaint against you with the Office of Lawyer Regulation, one, as of now, that hasn't occurred, and if you are going to comply with the rules of professional conduct and do what you think is right, you shouldn't have anything to fear and any filing with the Office of Lawyer Regulation would then be denied.

The court then denied trial counsel's motion to withdraw.

¶28 After the trial ended, Bowman waived his attorney/client privilege with trial counsel. Bowman's postconviction counsel submitted an email from trial counsel that described the conflict as:

> After the judge ruled against my written motion I went to the back to speak to Mr. Bowman and to get contact info of [M.B.] I was hoping to have an investigator or myself talk to [M.B.] and speak to her about coming into court to testify about the alleged incident. I remember Mr. [B]owman being upset about me trying to contact his daughter and stated that I "was doing something illegal" by trying to contact her. I told Mr. Bowman that was not the case that we needed her to show up and recant her statement otherwise there was a good chance Forfeiture by wrongdoing would bring in her statements and Mr. Bowman would likely be convicted. Again he reiterated that I "was doing illegal things" and I again brought the motion to withdraw on the grounds I believed Att[orney] Client relationship had broken down and that Mr. Bowman was going to refer me to OLR (which he did)."

¶29 Bowman argues that the conflict of interest occurred when trial counsel was deprived of his control over what witnesses to call at trial. Bowman reasons that while a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal," *Jones v. Barnes*, 463 U.S. 745, 751 (1983), trial counsel has the authority to direct trial strategy and choose witnesses. *See* *State v. Suriano*, 2017 WI 42, ¶10 n.5, 374 Wis. 2d 683, 893 N.W.2d 543. Bowman asserts that his refusal to allow trial counsel to pursue having M.B. appear at trial conflicted with trial counsel's zealous advocacy.

¶30 In essence, Bowman argues that his own actions prevented trial counsel from effectively providing counsel. That is not a conflict of interest. A conflict of interest is not a difference in opinion with counsel, it is a conflict where the attorney faces divided loyalties in representing the defendant. Bowman fails to

14

develop a legal argument to support that a defendant's interference with trial counsel's authority to call witnesses should then be considered an actual conflict of interest. We will not develop an argument for him. *See **State v. Stewart***, 2018 WI App 41, ¶29, 383 Wis. 2d 546, 916 N.W.2d 188.

¶31 We form no opinions on trial strategy in this case, but the facts before us do not raise concerns of an actual conflict of interest for trial counsel. In an inquiry into counsel's conflict of interest, we "examine the underlying fact situation … to determine whether there is an intolerable risk that the attorney might sacrifice the goals of his client to serve selfish ends or the interests of another." ***State v. Franklin***, 111 Wis. 2d 681, 687-88, 331 N.W.2d 633 (Ct. App. 1983). There are simply no facts to support that trial counsel had competing loyalties either to his own interests or to another party. After the motion to withdraw was denied, there were no competing loyalties for trial counsel. *See **State v. Street***, 202 Wis. 2d 533, 542, 551 N.W.2d 830 (Ct. App. 1996). Here, trial counsel did not overrule Bowman and pursue M.B.'s appearance at trial. Bowman now objects that, in essence, he was wrong. However, we cannot fault trial counsel for Bowman's actions. *See **Strickland v. Washington***, 466 U.S. 668, 691 (1984).

¶32 Bowman's additional arguments are also not developed. Bowman contends that trial counsel's conversation with Bowman in which he refused to allow counsel to approach M.B. created an adversarial relationship between the two. Additionally, he asserts that trial counsel's enthusiasm to represent Bowman was dampened by having his motion to withdraw denied. Bowman then criticizes trial counsel's failure to emphasize the proper legal authorities for the due diligence issue and his failure to argue that time would diminish the effect of Bowman's phone calls. The State argues that Bowman has failed to allege how

any of these alleged deficiencies prejudiced his defense under *Strickland*. In response, Bowman returns to the "actual conflict of interest" analysis and its presumption of prejudice if proven, but he fails to develop an argument to show how any of these issues were actual conflicts. We decline to address undeveloped arguments. *See Pettit*, 171 Wis. 2d at 646.

¶33    We conclude that Bowman has not demonstrated by clear and convincing evidence that trial counsel represented actual conflicting interests. Therefore, Bowman's claim for ineffective assistance of counsel on that basis fails. Bowman has not alleged deficiency or prejudice under *Strickland* and we conclude he has failed to show trial counsel provided ineffective assistance.

## CONCLUSION

¶34    We conclude that Bowman has failed to show that the trial court erred when it admitted M.B.'s statements under the forfeiture by wrongdoing doctrine. Therefore, Bowman's rights under the Confrontation Clause were not violated. We also conclude that Bowman's claim for ineffective assistance of counsel based on an actual conflict of interest also fails. Therefore, we affirm his judgments of conviction and the orders denying his motion for postconviction relief.

*By the Court.*—Judgments and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

16